(101 App. Div. 159)

### In re LONG BEACH LAND CO.

(Supreme Court, Appellate Division, Second Department. January 6, 1905.)

1. TAXATION—TAXABLE PROPERTY—REAL ESTATE.

Buildings erected on leased premises by a lessee holding under a lease from a town for a fixed term at an annual rent which requires the lessee to expend during the first year of the term within the town, "either in the construction of a railroad or improvements" on the premises, not less than $100,000, and which stipulates that in default in the payment of rent the town may re-enter and occupy for its benefit all improvements thereon, are part of the real estate, and are not assessable against the lessee.

2. SAME.

The fact that the board of assessors assessed the buildings to the lessee does not add anything to the agreement, the town board, as con-

stituted by Laws 1890, p. 1233, c. 569, § 160, being the only persons authorized to act for the town.

3. SAME.

The fact that the buildings were erected for the purpose of the business of the lessee does not change the rule nor make them the lessee's property.

4. SAME—APPORTIONMENT BETWEEN LANDLORD AND TENANT—RES JUDICATA.

A judgment of the county court, determining the question whether buildings on leased premises erected by the lessee should be assessed against him or against the landlord, rendered on default of the assessors without service of notice on the lessee, is not res judicata in a proceeding under the tax law (Laws 1896, p. 884, c. 908, § 257) for an apportionment of the taxes for a subsequent year between the landlord and lessee.

Appeal from Nassau County Court.

Application by the Long Beach Land Company for an apportionment between it and the Long Beach Association of taxes imposed by the town of Hempstead. From an order denying the application, the applicant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Fred Ingraham, for appellant.

George Wallace, for respondent assessors.

WOODWARD, J. The assessors of the town of Hempstead for the year 1903 have assessed to the Long Beach Land Company certain real estate within that township, and this proceeding was instituted in the County Court of Nassau County, under the provisions of section 257 of the tax law (Laws 1896, p. 884, c. 908), for an apportionment of the assessment, it being claimed that the buildings upon such property belong, not to the Long Beach Land Company, but to the Long Beach Association. Upon the trial of the issues the learned court below made findings of fact and conclusions of law denying the application upon the ground that the buildings constituted a part of the real estate, and were properly assessed against the Long Beach Land Company. The latter appeals from this decision.

There is no doubt that in this state parties may, by contract, so regulate their respective interests in real estate that one may be the owner of the buildings and the other of the land, and in such a case each interest may be assessed to its owner, and an assessment of the buildings as real estate is proper. People ex rel. Muller v. Board of Assessors, 93 N. Y. 308, 311, and authorities there cited. But a contract is necessary to overcome the familiar rule that, when structures are erected by persons not owners of the land, they become part of the realty, and, as such, the property of the landowner. People ex rel. International Navigation Co. v. Barker, 153 N. Y. 98, 100, 101, 47 N. E. 46. We are unable to find in the evidence before the court any contract between the parties or their predecessors in title which would justify the inference that the buildings upon the lands of the Long Beach Land Company belong to the Long Beach Association. On the contrary, we

are of opinion that, as a matter of law, these buildings belong to the Long Beach Land Company, and, as such, were properly assessed to the petitioners. The lands in question originally belonged to the town of Hempstead. In 1880 the town of Hempstead entered into written leases of the premises to one Thomas R. Sharp for a term of 50 years. These leases were subsequently assigned to the Long Beach Association, now in the hands of a receiver, the latter being in possession of the premises under those leases, and a party to this proceeding. Subsequently, and in the year 1900, the town of Hempstead conveyed the lands in question to the Long Beach Land Company, subject to the leases, making no mention of the buildings or improvements. The appellant urges that the proper construction of the leases shows that the buildings, consisting of two large hotels and thirty-three cottages, belong to the tenants. It becomes important, therefore, to consider the terms of the lease covering the premises upon which these buildings are erected. This lease lets and rents unto the party of the second part, and the party of the second part hires and takes from the party of the first part "all that certain piece or parcel of beach lands situate in said town, and lying southerly of the village of East Rockaway, and being known as Long Beach, * * * for the period of fifty (50) years from the date hereof at the yearly rental of seven hundred dollars ($700.00), payable annually to the supervisors of said town of Hempstead; * * * and the said party of the second part hereby covenants and agrees to and with the said party of the first part to expend or cause to have expended within the said town of Hempstead and south of the village of East Rockaway, either in the construction of a railroad or improvements on said demised premises within one year from the date hereof not less than one hundred thousand dollars; and it is agreed that if any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the parties of the first part to re-enter the said premises, and to remove all persons therefrom, and to occupy and use for the benefit of the party of the first part all improvements erected thereon; and the said party of the first part hereby covenants and agrees that the party of the second part, or assigns, on paying the said yearly rent and performing the covenants aforesaid, shall and may peaceably and quietly have, hold, and enjoy the said demised premises for the term aforesaid."

What is the fair construction of these provisions? for there are no others having any bearing upon the question. The contract contemplated the expenditure of $100,000, either in the construction of a railroad or improvements on said demised premises within one year from the date of the same, so that the matter was fairly within the consideration of the parties; yet we find no mention of any intention of reserving the ownership of any of these improvements to the lessee or his assigns, and, the latter having elected to construct these building upon the demised premises, we see no escape from the conclusion that the parties fairly contemplated that the improvements were to become part of the realty, and become the

property of the lessors at the end of the demised term. In other words, the lessee agreed to improve the premises to the extent of $100,000, and to pay an annual rental of $700 per year for a period of 50 years, in consideration of a lease of this land for that period, which, independent of considerations of interest and possible deterioration in the buildings, was equivalent to an annual rental of $2,700 per year, which it would seem was not an unreasonable contract, considering the advantages of the location and the purposes intended. Every man is presumed to know the law, and the parties to this contract must be presumed to have known that, in the absence of a contract between them, the improvements would belong to the land. The fact that they are absolutely silent upon the subject, though expressly covenanting for very important improvements, would seem to be conclusive that they intended that the ordinary rule of law should prevail. The fact that the lessee had the option of making this expenditure upon a railroad outside of the premises demised does not detract from this view. The lessor might have thought that the construction of a railroad, with the improvements which the lessee must make to get any adequate return for its annual rentals, would be equivalent to the expenditure of the stipulated sum upon the demised premises; and the agreement that, if any rent should be due and unpaid, the party of the first part might re-enter and "occupy and use for the benefit of the party of the first part all improvements erected thereon," shows that it was not intended that the said improvements should be removed, or that they were in any manner severable from the land. The provisions of the lease are identical with those of the former lease of the west portion of Long Beach, in so far as it has any bearing upon the question at issue here. We can discover no intimation in the contract that there was any understanding between the parties, except such as is evidenced by the ordinary construction of the language used, and which appears to have contemplated a long time lease of premises for the purposes of a seaside resort, the lessee agreeing to make improvements of a given value and to pay an annual rental for the use of the premises as so improved. This was a good investment for the town of Hempstead. The covenant to make these important improvements was a guaranty of the erection of summer hotels and cottages, affording an immediate market for the products of the fisheries and farms of the locality, and placing the town in the possession of a valuable property at the end of the demised term, in the meanwhile realizing in rentals a sum of money which was probably in excess of any possible income from that source at the time of this lease. The contract involved large sums of money; it was to extend over a period of half a century—conditions likely to insure caution and precision in its terms; and there is no possible justification for reading into it limitations which the contracting parties have not expressed.

It is true, as suggested by the learned counsel for the appellant, that whether the right to removal of the buildings exists is a question of existing intention of the parties at the time of the annex-

ation, but the difficulty is that there is no evidence in the case, nor was any offered, to show that there was an existing intention of the parties to the effect that the improvements might be removed at the time of the annexation. The improvements, at least to the extent of the sums named in the leases, were annexed to the premises, in contemplation of law, at the time a valid contract was made and delivered for the construction of such improvements. That was the time that the intention of the parties became operative, and there is no suggestion in the contract of any intention to modify the ordinary rule of law in respect to these improvements. Nor could the fact that the board of assessors in subsequent years assessed the buildings to the tenants add anything to the agreement. The assessors of the town of Hempstead were not parties to the contract. The leases were signed by the supervisor, the town clerk, and the justices of the peace—the town board, as constituted by section 160 of the Town Law (Laws 1890, p. 1233, c. 569)—and the only persons authorized by law to act in behalf of the town in matters of this character; and the assessors, by mistaking their duties under the law, could not change the contract existing between the town and the lessee.

It is probably true, as suggested by counsel, that the parties to this lease might have entered into a parol agreement, subsequent to the lease, by which the tenants might have been given the right to erect buildings upon the land, and to remove them at the close of the term. But such a contract would, of necessity, have been an entirely independent contract, resting upon a valid consideration, and there is not the slightest evidence in this case to show that there was ever any agreement between the parties in respect to this matter, except such as is expressed in the leases. Stephens v. Ely, 162 N. Y. 79, 56 N. E. 499, merely held that, where there was a written lease of premises, and subsequent developments showed that the same were unfit for the purposes for which they were rented, the parties might make an independent contract by which the tenant was to make the improvements, with permission to remove them at the end of the demised term.

The suggestion that these permanent hotel buildings and cottages come under the rule which permits the removal of structures erected for the purpose of carrying on the trade of the lessee is without force, and we are clear that the case of Schoellkopf v. Coatsworth, 166 N. Y. 77, 59 N. E. 710, does not help the appellant. In that case the contract provided for the erection of certain buildings, and it was provided that the lease should run for fifteen years, and, unless a notice was given six months before the expiration of such term, the lease should be deemed to be extended for five years longer, and so on indefinitely for five-year periods. It was also provided that, if the lessor elected to terminate the lease at the end of the term, he should pay the value of such buildings to the lessee: the point determined being that the contract for payment of the value of the buildings was a continuing one, going to the end of the leased term, as extended from time to time under its provisions.

It was in connection with this state of facts that the court used the language cited by the appellant, in which it was said that:

"If it had been the understanding of the lessors that at the end of twenty years they became the absolute owners of the buildings as well as the land, it would be folly to suppose that they would have permitted the original agreement to continue, and have received a rent of only seven hundred dollars for the use of premises, which had been increased in value $30,000 by the buildings erected, or to nearly three times the value of the land."

But here there is no contract on the part of the lessor to pay for the buildings at the end of the term, and the rent of $700 per year is only a part of the consideration for the lease; the remainder being the added value to the premises, which may revert to the lessor at any time during the demised term for a breach of the covenants.

We are of opinion that a previous adjudication of this question before the County Court upon the default of the assessors does not operate to determine the duty of the present board of assessors, particularly as it is alleged in the answer, and not controverted by the evidence, that no notice of such determination was ever served upon the board of assessors at that time, or upon the present board of assessors. The petition in this matter does not show that the first petition, which related to the assessment of a previous year, was duly served upon the assessors, or upon the "party whose premises are included in such wrongful assessment" (section 257, Tax Law, Laws 1896, p. 884, c. 908), and in a proceeding of this character the ownership of the property could not be determined without the presence of the Long Beach Association. A judgment or order entered by default of the assessors, no notice having been given to the Long Beach Association, could not become res adjudicata in the present proceeding, and this court is not bound to presume anything beyond what is contained in the record.

The order appealed from should be affirmed, with costs. All concur