In the Matter of the Application of the LONG BEACH LAND COMPANY, Respondent, for a Writ of Certiorari.

WILLIAM H. S. SMITH et al., as Assessors of the Town of Hempstead, Appellants.

TAX — ASSESSORS' STIPULATION AS TO REDUCTION OF ASSESSMENT ON LEASED LANDS IMPROPERLY CONSIDERED BY COURT IN PROCEEDING TO REVIEW ASSESSMENT.. A stipulation made by assessors, in a proceeding to review an assessment of land claimed to be held under leases, that if the court decides that the owner is not entitled to immediate possession then the assessment may be reduced to a specified sum, fails where the court

properly refuses to pass upon the question of the validity of the leases in such a proceeding and should be disregarded; and the court should proceed and ascertain by reference or otherwise the fair value of the land, as a basis upon which the owner is taxable, notwithstanding the existence of the leases.

*Matter of Long Beach Land Co.*, 106 App. Div. 253, reversed.

(Argued October 4, 1905; decided October 24, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 23, 1905, which affirmed an order of Special Term reducing an assessment for taxation upon lands of the petitioner.

The relator, the Long Beach Land Company, is the owner of a large tract of beach land situated in the town of Hempstead, Long Island. This land formerly belonged to that town, which conveyed it to the relator in 1900, and in 1904 the land and buildings were assessed at $200,000 by the local board of assessors. The relator complains of this valuation as excessive, and has brought this proceeding to obtain a reduction thereof.

It appears from the relator's petition that in the year 1880 certain persons who claimed to act for the town of Hempstead, executed two leases, demising the land in question to one Thomas R. Sharp for the period of fifty years, at an annual rental reserved in one lease of $300, and in the other of $700. A corporation known as the Long Beach Association subsequently acquired the rights of the said Sharp in these leases. The lessee, or his assigns, erected buildings on the land, but there is nothing in the leases which gives them the right to remove such buildings at the end of the term.

The relator claims that by reason of these leases it can have no actual possession of this land until the expiration of such leases in 1930, and that its income therefrom is confined to the rents reserved, amounting to $500.

The board of assessors in their return to the writ alleged that the lands were worth $200,000 and that they regard that sum as a fair valuation. They alleged that the leases above

mentioned were void; "that the town had never 'made long leases of all of said lands to Thomas R. Sharp,' as alleged in relator's petition, but instead, that such alleged leases were made and delivered by the members of the Town Board of said Town of Hempstead without authorization of the inhabitants of the town and in violation of law; that the said alleged leases were mere paper writings signed by individual officials and of no legal force or effect, and that, they being null and void, the relator has the right to the present use and enjoyment of the said property." The return also contains the following stipulation : " Defendants further say that should it be decided by the court that the petitioner has not now and is not entitled to possession and use of the premises so assessed, they would regard the sum of $200,000 as too high a valuation to be put on the lands; if so decided by the court, they will not put the petitioner to the trouble of offering proof of value, but will consent to the entry of an order fixing the value at $50,000."

The parties have also entered into the following stipulation : " That the lands referred to in the petition and return are a part of the common lands which were of the town of Hempstead granted by the Dongan Patent and previous patents. That the alleged leases referred to, as granted by members of the town board, were never submitted to the people of the town at a town meeting after they were given ; neither was the proposition to lease submitted before they were given."

At Special Term the assessment was reduced to $50,000 and its decision thereon has been affirmed by the Appellate Division.

*George Wallace* for appellants. The Tax Law governs all assessments and must be explicitly followed. (L. 1896, ch. 908, §§ 2, 4, 21 ; *Matter of L. B. Land Co.*, 101 App. Div. 161.)

*James W. Treadwell* and *Fred Ingraham* for respondent. The proceeding is a statutory one under the Tax Law. By

the express terms of that law the court is authorized to reduce the assessment if apparently erroneous, and is only required to take testimony when, upon · inspection of the return, it seems to the court necessary so to do. (L. 1896, ch. 908, § 253.) The taking of oral testimony is not mandatory unless there is a substantial issue upon material facts. Here there was none. .(*People* v. *Zoll*, 97 N. Y. 203 ; *People* v. *Feitner*, 92 App. Div. 518.) The court and the assessors were bound by the admission and consent contained in the return. The return was a pleading and governed by all the rules as to pleadings. (*Matter of Cathedral of Incarnation*, 91 App. Div. 543 ; *Paige* v. *Willet*, 38 N. Y. 28 ; *Field* v. *Surpless*, 83 App. Div. 268 ; *Traitel* v. *Dwyer*, 61 N. Y. Supp. 1100 , *Straus* v. *Am. Pub. Assn.*, 96 App. Div. 315.)

Werner, J. Both parties concede, and the courts below have held, that the validity of the so-called leases to Sharp cannot be passed upon in this proceeding. It is obvious, however, that these leases have been considered and their validity assumed by the courts below in reducing the assessment. In the absence of other evidence, effect has been given to the stipulation contained in the return of the assessors to the effect that if it should be decided by the court that the relator " has not now and is not entitled to possession and use of the premises, they would regard the sum of $200,000 as too high a valuation to be put upon the lands," and would consent that the value be fixed at $50,000.

We think this stipulation should have been disregarded. The court should have proceeded by reference, or otherwise, to ascertain the fair value of the land. In their return the assessors stated that they regarded the sum of $200,000 to be the fair value of the lands. They denied the validity of the leases and their stipulation relating to the reduction of the assessment was qualified by the condition, if the court should decide that the relator was not entitled to the possession of the land, in which event they regarded the sum of $200,000 as too high a value and would consent to its being fixed at

$50,000. Since the court properly decided that it had no power in this proceeding to determine the validity of the leases, the occasion and purpose of the stipulation failed. It was limited by its terms to an event that has never occurred. When the court refused to pass upon the validity of the leases, the stipulation was no longer of any force. It is evident that the assessors did not regard the leases as valid, and they so stated in their return. They regarded the relator as entitled to the immediate possession of the premises, and upon that basis fixed the fair value thereof at $200,000. It was only in the event that the court should hold the contrary that they consented to a reduction to $50,000.

It appears that since this application was made, the Appellate Division has affirmed a decision of the County Court made in a proceeding to apportion the taxes for the previous year (1903) between the owner and the tenant, the Long Beach Association, wherein apportionment was denied. In that proceeding it was held that the relator here was the rightful owner of the buildings upon the premises (*Matter of Long Beach Land Co.*, 101 App. Div. 159), and while that decision was rendered after the assessment in question was made, and is not controlling here, it throws a strong sidelight upon the stipulation relied upon by the relator and explains the purpose for which it was made.

The learned counsel for the relator further contends that the deed from the town to the relator conveyed nothing to the latter except the reversionary interest remaining after the expiration of the leases, together with the rents reserved, and, therefore, the assessment is excessive. The answer to that contention is that the relator was the owner of the land and as such owner was subject to be taxed upon the basis of the fair value thereof, notwithstanding the existence of the leases.

This situation is not changed by section 8 of the Tax Law, which provides that rents reserved in leases for a term of more than twenty-one years shall be taxable to the person entitled to receive the same as personal property. This statute was originally enacted to remedy some of the condi-

tions which were created by the old manorial or Van Rensselaer leases, and which gave rise to the anti-rent war, as it was called. (L. 1846, ch. 327; *City of Buffalo* v. *Le Couteulx*, 15 N. Y. 451.) Shortly after its enactment this statute was construed by the Supreme Court, and it was stated that it might in some cases result in double taxation, but the necessity and expediency of the tax was to be judged by the legislature. (*Livingston* v. *Hollenbeck*, 4 Barb. 9; *Le Couteulx* v. *Supervisors of Erie Co.*, 7 id. 249.) It is not perceived, therefore, how this statute affects the liability of the relator to pay taxes upon the real estate in question.

It follows that the order appealed from should be reversed and the proceeding remitted to the Special Term, with directions to proceed, either by reference or otherwise, to take proof as to the value of the lands in question, with costs to abide the final award of costs.

Cullen, Ch. J., Gray, Bartlett, Haight and Vann, JJ., concur; O'Brien, J., absent.

Order reversed, etc.