The People of the State of New York ex rel. William C. Fitts and Others, as Receivers of New York Steam Company, and Said Company, Appellants, v. Jacob A. Cantor and Others Constituting the Board of Taxes and Assessments of the City of New York, Respondents.

First Department, July 14, 1922.

Taxation — assessment — tunnels under street in New York city erected with consent of city to connect relators' properties — consent required relators to pay taxes in addition to compensation — consent to run for definite period subject to termination by city on sixty days' notice — consent provided that tunnels should be removed by relators at termination of consent or taken over by city at its option — tunnels were property of relators and were properly assessed in connection with real property belonging to relators.

Two tunnels constructed across and under a street in New York city by the relators for the purpose of connecting their properties, one of which was used as a passageway for employees and for transportation of materials and to hold

steam pipes connecting the buildings and the other of which was used as a smoke flue, were absolutely owned by the relators and were a part of their real property and were properly assessed as such in connection with the real property of the relators on either side of the street, where it appears that the consent by the city to their construction required the relators to pay taxes in addition to compensation, and provided that they might maintain the tunnels for a definite period subject to termination by the city on sixty days' notice, and that on the termination of the consent the relators should remove the tunnels or turn the same over to the city at the option of the latter.

SMITH, J., dissents.

APPEAL by the relators, William C. Fitts and others, from so much of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 8th day of February, 1922, as confirms an assessment of taxes for 1921 on certain parcels of real estate assessed under Identification No. A-30, sub-designation 30-a and 30-e, and also from so much of said order as reduces the assessment made under Identification No. A-30 described by sub-designations 30-a, 30-b, 30-e, 30-f and 30-g.

*Joseph Wamsley* of counsel, for the appellants.

*John P. O'Brien, Corporation Counsel [William H. King* of counsel; *Isaac Phillips* with him on the brief], for the respondents.

DOWLING, J.:

This is an appeal by the relators from so much of a final order made in the above-entitled certiorari proceeding brought to review the taxes of 1921 as (1) confirms assessments for said taxes, of $7,500 and $6,500, respectively, on two tunnels across East Fifty-ninth street, between Avenue A and East river, in the borough of Manhattan; (2) reduces by only $10,000 a total assessment of $26,500 for said taxes on five separate pieces of property assessed in a group as real estate, which group includes said tunnels.

The property described under sub-designation 30-a is a tunnel constructed under and across East Fifty-ninth street at a point 115 feet east of the easterly line of Avenue A or Sutton place, borough of Manhattan, to connect properties owned by the New York Steam Company on both sides of said street, used for laying steam pipes through the same and for general uses as a passageway for employees and for transferring materials.

Permission to construct said tunnel was given to the New York Steam Company by resolution adopted by the board of estimate and apportionment on July 8, 1907. An agreement accepting such privilege was entered into between the city and the New York Steam Company on July 26, 1907. The order of Special Term confirmed the assessment thereon of $7,500.

The property described under sub-designation 30-e is a tunnel constructed under and across East Fifty-ninth street, between Avenue A and the East river, borough of Manhattan, from property of the New York Steam Company on the southerly side of said street to property of the city located on the northerly side and occupied by a stack erected and maintained by said company, under agreement with the city. Permission to erect said tunnel was given to the New York Steam Company by resolution adopted by the board of estimate and apportionment on March 23, 1917. An agreement accepting such privilege was entered into by the city and the New York Steam Company on April 23, 1917. The order of Special Term confirmed the assessment thereon of $6,500.

There was also an assessment levied on property known as sub-designation 30-b, which was a building erected on lot 3, block 1474, section 5, in the borough of Manhattan, which lot belonged to the city of New York, and on which lot, leased to it by the city, the company had erected a brick building with a stone foundation, assessed at $10,000. But the lease contained no covenant that the company should be the owner of any building or structure it might erect on the lot, nor that it might at the expiration of the lease remove such building. Wherefore the defendants admitted in their return to the writ herein that they had acted in error in assessing said building, and that the assessment thereon was illegal and void, and set up that they had remitted the taxes for 1921 therein, and the order appealed from vacates and sets aside said assessment and in that respect is not appealed from by defendants.

The facts herein are not in dispute.

Relators are the receivers of the New York Steam Company, a domestic corporation, which at all the times in question owned land on the northerly side of Fifty-ninth street, east of Avenue A in the borough of Manhattan, city of New York, and also owned land on the southerly side of said street, on which it proposed to erect a new building. It applied to the board of estimate and apportionment of the city of New York for its consent to the construction, maintenance and use of a tunnel under and across East Fifty-ninth street, about 115 feet east of the easterly line of Avenue A, the same to be used to contain steam pipes running between the two buildings, and as a passageway for employees and for the transportation of materials. It received such consent on July 8, 1907, and the tunnel constructed thereunder was drilled through solid rock and waterproofed with concrete and some mixture, and connects the main stack of the company with the property across the street. This is the tunnel assessed as 30-a.

The resolution of the board of estimate and apportionment granting the consent provided, among other things, that the consent should continue only during its pleasure and was revocable upon sixty days' notice in writing, but in no event was it to continue for more than twenty-five years; and that an annual compensation should be paid at a fixed amount, beginning with a payment of $200, and " such payments shall not be considered in any manner in the nature of a tax, but shall be in addition to any and all taxes of whatsoever kind or description now or hereafter required to be paid under any ordinance of The City of New York or by any law of the State of New York."

It also provides:

" 3. Upon the removal of the said grantee from either one or both of the buildings-to be connected by the tunnel, or upon the revocation or termination by limitation of this consent, the said grantee, its successors or assigns, shall, at its own cost, cause the tunnel to be removed and all that portion of East Fifty-ninth street affected by this permission to be restored to its proper and original condition, if required so to do by The City of New York or its duly authorized representatives. If the tunnel to be constructed by the said grantee under this consent shall not be required to be removed, it is agreed that the said tunnel shall become the property of The City of New York.

" 5. The said grantee shall pay the entire cost of:

" (a) The construction and the maintenance of the tunnel.

" (b) The protection of all surface and subsurface structures which shall in any way be disturbed by the construction of the tunnel.

" (c) All changes in sewers or other subsurface structures made necessary by the construction of the tunnel, including the laying or relaying of pipes, conduits, sewers or other structures.

" (d) The replacing or restoring the pavement in said street which may be disturbed during the construction of said tunnel.

" (e) Each and every item of the increased cost of any future substructure caused by the presence of said tunnel under this consent.

" (f) The inspection of all work during the construction or removal of the tunnel, as herein provided, which may be required by the President of the Borough of Manhattan and the Commissioner of Water Supply, Gas and Electricity."

By the 6th clause of the consent the grantee was required to obtain permits to do the work. The 7th clause provided that the grantee should allow the city of New York a right of way through, under or above any part of the tunnel for any and all subsurface

structures which might be placed by the city in that part of East Fifty-ninth street occupied by the tunnel.

The consent was made dependent upon the grantee depositing the sum of $1,000 as security for the performance of its terms and conditions, especially those relating to the payment of the annual charge and the repairs of the' street pavement; and it was not to become operative until the grantee should execute an instrument in writing agreeing to perform all the requirements of the consent, which it did on July 26, 1907.

The second tunnel, assessed as 30-e, is excavated through rock with a roof of reinforced cement, waterproofed throughout with concrete, and is a continuous structure, constituting a passageway between a building on the south side of Fifty-ninth street and a stack on the north side, the former erected on land belonging to the company, the latter on land leased by the city to the company. This tunnel is used as a smoke flue. The consent of the board of estimate and apportionment to its construction was given March 23, 1917. The resolution granting such consent is substantially the same as the one of 1907 for the other tunnel, save that it is more particularized so as to impose the entire cost of removal upon the grantee. The consent was given during the pleasure of the board of estimate and apportionment, revocable on sixty days' written notice, but in no case to extend beyond July 31, 1926. An annual compensation was fixed and it was provided: " Such payments shall not be considered in any manner in the nature of a tax, but shall be in addition to any and all taxes of whatsoever kind or description now or hereafter required to be paid under any ordinance of The City of New York or by any law of the State of New York."

It was further provided:

" 3. Upon the removal of the grantee from either of the premises to be connected by the structure, or upon the revocation or termination by limitation of this consent, the grantee shall cause the structure hereby authorized to be removed and all of said street affected by this permission to be restored to its proper and original condition, if required so to do by The City of New York or its duly authorized representatives, and the entire cost of such work shall be borne by said grantee. If the structure hereby authorized shall not be required to be removed, it is agreed that it shall become the property of The City of New York."

. The grantee executed the agreement in writing required by the consent on April 23, 1917.

The two tunnels in question have been used and operated by the company and its receivers since their construction.

It is the contention of the appellants that the assessments ques-

tioned are illegal because said tunnels crossing Fifty-ninth street are constructed on land of the city and are fixtures thereof and, therefore, exempt; that the relator company has no taxable interest therein, having no easement or other interest than a temporary license to use the same during the pleasure of said board of estimate, and in any event not beyond a fixed period of limited duration. But the consents in question both provide that the grantee shall pay all taxes imposed by the city or State, in addition to the compensation provided, and show clearly that the tunnels were the absolute property of the company until the privileges were revoked upon notice, or were terminated by limitation. The city could require the company in these events, at the latter's expense, to remove the tunnels and restore the street to its original condition, or it could release the company from that expense and take over the structures. So that the tunnels remained the sole property of the company until the end of the grant, and it could remove the materials composing them then and fill in the void thereby left, unless the city should elect to take over the subsurface structures and relieve the company from the necessity of removing them. In no event would any one have any right in the tunnels until the consents expired or were revoked, save the company. In *People ex rel. Manhattan & Queens Traction Corp.* v. *State Board of Tax Commissioners* (N. Y. L. J. March 7, 1916; affd., without opinion, 175 App. Div. 929; affd., 221 N. Y. 583) an assessment was claimed to be invalid on the ground that the tracks, wires and other equipment used and operated by the railroad company belonged to the city of New York and were, therefore, exempt from taxation. The contract there contained the following provisions:

"*Third.* Upon the termination of this original contract, * * * the tracks and equipments of the company constructed pursuant to this contract within the streets and avenues shall become the property of the City without cost, and the same may be used or disposed of by the City for any purpose whatsoever, or the same may be leased to any company or individual.

"If, however, at the termination of this contract as above, the board shall so order by resolution, the company shall, upon thirty (30) days' notice from the board, remove any and all of its tracks and other equipment constructed pursuant to this contract and the said streets and avenues shall be restored to their original condition at the sole cost and expense of the company * * *."

The court, however, held that the title to the tracks and structures remained in the company. The present is a stronger case, it seems to me, in favor of the city, for here title to the tunnels undoubtedly remained in the company, and it was to take them down and remove

the materials as its property unless the city elected to take them over, while in the case cited the property was to belong to the city, unless it ordered the same removed. I reach the conclusion, therefore, that the tunnels in question were the property of the company when the assessment was levied.

As was said in *People ex rel. Muller* v. *Board of Assessors* (93 N. Y. 308): " The title and ownership of permanent erections by one person upon the land of another, in the absence of contract rights regulating the interests of the respective parties, generally follows and accrues to the holder of the title of the land, but it is perfectly competent for parties by contract to so regulate their respective interests that one may be the owner of the buildings and another of the land."

In my opinion these tunnels belonging to the company have been lawfully assessed in connection with the real property belonging to it, with the buildings erected upon which they are so physically joined as to form a part thereof; and they are so operated as to form an integral part of the company's plant and to be used by it, as to one of the tunnels, practically as an extension of a flue, as to the other, as an adjunct to its activities.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., LAUGHLIN and PAGE, JJ., concur; SMITH, J., dissents.

Order affirmed, with ten dollars costs.