**CHICAGO TITLE & TRUST COMPANY, Complainant,**

v.

**FOX THEATRES CORPORATION, Defendant.**

**Application of Kenneth STEINREICH and**

**Leopold Porrino, As Trustees of the Assets which were of Fox Theatres Corporation, and on behalf of the beneficiaries of their Trust, comprising the creditors and stockholders of Fox Theatres Corporation, now known respectively as Preferred Participants and Participants of said trust, Petitioners,**

v.

**Ruby SCHINASI, Bankers Trust Company, Solomon Leon Schinasi, also known as S. Leon Schinasi, and Betti Schinasi Goldsmith, as Trustees under the Last Will and Testament of Leon Schinasi, Deceased, Respondents.**

United States District Court
S. D. New York.
July 29, 1958.

---

4. N. T. 95–138.

Hirson & Bertini, New York City, for petitioners.

Robert Aronstein, New York City, for creditors, Robert Aronstein, David G. Haskins, Arnold A. Hackmyer, New York City, of counsel.

Corbin, Bennett & Delehanty, New York City, for Ruby Schinasi, Solomon Leon Schinasi and Betti Schinasi Goldsmith, as trustees.

William Saxe, New York City, for Bankers Trust Co., as trustee.

FREDERICK van PELT BRYAN, District Judge.

This is an application in the nature of a summary proceeding made in an equity receivership commenced in this court in 1932.

On January 30, 1939 an order was entered in this receivership confirming a plan proposed by the equity receiver for the realization upon and liquidation of the assets of the defendant corporation. Pursuant to this realization plan all the assets of the receivership and of the de-fendant corporation were transferred to and vested in trustees under a deed of trust for the benefit of the creditors and stockholders of the corporation. The deed of trust, executed as of February 24, 1939, was duly filed with the County Clerk of New York County and supervision over the administration and enforcement of the trust is vested by the trust instrument in the Supreme Court, New York County. Trustees duly designated have been carrying out the terms of the trust under the supervision of that court ever since. The petitioners here are the present trustees.

The respondents are the trustees under the will of and successors in interest to Solomon Schinasi, the owner of real property on East 13th and East 14th Streets known as the Academy of Music property, who leased these premises in 1916 to William Fox Realty Corporation, a New York corporation, for a term of forty-two years from November 1, 1916 to October 31, 1958. During the term of the lease, and pursuant to its provisions and those of a simultaneously executed building agreement, the lessee erected upon the leased premises the Academy of Music Theatre and a business building.

The petitioners now claim that, as trustees of Fox Theatres Corporation which presently owns all of the capital stock of William Fox Realty Corporation, they are the owners of the buildings erected upon the leased premises by the latter corporation. In substance, they ask this court, in this summary proceeding, to declare that they and the respondents are owners in common of the fee and the buildings and equipment on the premises, and that the court order the sale of the property and the equitable division of the proceeds unless the respondents agree to pay them the fair and reasonable value of the buildings and equipment as fixed by the court.

The respondents have filed an answer denying that the petitioners have any interest in or right to the buildings and equipment at the expiration of the lease, and setting forth in full the lease of the premises and the building agreement

which is incorporated therein. They now move to dismiss the petition for insufficiency, lack of jurisdiction, defect of necessary party and lack of authority to sue. Petitioners, in turn, have moved to strike certain defenses interposed in the answer as insufficient in law.

Respondents' first ground of attack on the petition is that this court has no jurisdiction over the subject matter. In order fully to understand the contention which they make it is necessary to review briefly some of the history of this troublesome and disturbing equity receivership.

At the outset of the receivership Chief Judge Manton of the Court of Appeals of this circuit designated himself as district judge for the purpose of assuming jurisdiction over it and all proceedings were conducted before him. In 1938 investigations were commenced of the judicial conduct of Judge Manton which culminated in his indictment for conspiracy to obstruct justice and his eventual conviction and sentence on these charges. See United States v. Manton, 2 Cir., 107 F.2d 834, certiorari denied 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012.

Before all this had come to light, however, Judge Manton had confirmed the plan for realization upon and liquidation of the Fox Theatres assets which has been previously mentioned, and the plan had been consummated. All assets had been turned over to duly designated trustees, participating certificates had been issued to the creditors and stockholders and the trust was in effect and operating for their benefit in accordance with its terms under the jurisdiction of the Supreme Court, New York County. This plan was described by the court as one "which would terminate the equity receivership, but which contemplates continued liquidation of the corporate assets". The trust set up was analogous to a corporation set up to distribute the assets of a receivership estate and is performing similar functions.

The plan and the trust set up thereunder have never been set aside and their validity is not in question. Indeed, the petitioners here derive their status to bring this proceeding solely from their position as duly designated, qualified and acting trustees of the trust.

Prior to the presentation of the realization plan the receiver had sold all of the capital stock of William Fox Realty Corporation, together with the Academy of Music lease which is the subject of the present application, to Skouras Theatres Corporation which was the sublessee of the Academy of Music Theatre from the Realty Corporation. This sale was approved by an order of Judge Manton entered on January 12, 1937.

The investigation of Judge Manton's activities brought into question certain of the Fox Theatres receivership transactions. In the spring of 1939 the United States Attorney, at the request of Chief Judge Knox of this court, began an investigation of such matters with the assistance of Robert Aronstein, the attorney for one of the substantial receivership creditors. On August 13, 1940 an indictment, which never came to trial, was filed against various persons, charging a conspiracy to bribe Judge Manton in connection with his order of January 12, 1937, approving the receiver's sale of the Fox Realty stock and Academy of Music lease to Skouras Theatres. Proceedings in the equity receivership to set aside the sale upon the ground of fraud ensued. On June 27, 1944 an order was entered by Judge Knox approving a settlement under which all of the property conveyed by the receiver to Skouras Theatres Corporation upon such sale pursuant to the order of June 12, 1937, together with certain cash payments, was returned to the realization plan trustees for the benefit of the Fox Theatres creditors.

Judge Manton's order confirming the realization plan had directed that the successive equity receivers file their accounts with the court and had reserved jurisdiction "to make from time to time such other and further orders in these proceedings as it may deem proper". The surviving receiver, who had proposed the plan, and the prior receivers

through him, filed accountings pursuant to these directions. Nathan A. Smyth, Esq., was appointed by Judge Knox as special master for the purpose of taking testimony on the objections. After testimony had been taken before him settlements were effected with the receivers and with the sureties of deceased receivers providing for the payment of substantial sums to the trustees which were approved by the court. Upon consummation of these settlements the receivers and their sureties were discharged by orders of the court dated November 27, 1945 and March 19, 1946 respectively.

On May 1, 1946 Judge Knox entered an order enlarging and extending the scope of the hearings theretofore authorized before Mr. Smyth as special master "to hear evidence and take testimony concerning all transactions had by the receivers herein respecting or pertaining to the assets of Fox Theatres Corporation and its subsidiary and affiliated corporations". The order further provided that Robert Aronstein, who had assisted the United States Attorney in his investigation of the receivership and had been a main moving party in setting the Skouras sale aside and in objecting to the accounts of the receivers, was authorized to present evidence before the special master. Continuation of hearings before the special master was authorized by Judge Knox on May 7, 1952. On May 6, 1957, shortly after this matter was assigned to me, I signed an order appointing a new special master to succeed Mr. Smyth who had died and authorizing further continuation of the hearings before him.

The present posture of the matter is therefore as follows:

All of the assets of the equity receivership have been vested for nineteen years in the trustees of the realization trust under the jurisdiction of the Supreme Court, New York County. During that period the trustees have been functioning and carrying out their duties under the trust indenture. None of the assets vested in the trustees are in the possession, custody or control of this court or its officers. Nor have they been since the plan was consummated.

While no order finally terminating the receivership has been entered, whatever powers were reserved in this court by the orders of confirmation related only to questions concerning the consummation and execution of the plan and to the filing of the accounts of the receivers and their release and discharge. No questions remain open as to the consummation or execution of the realization plan and the equity receivers have been fully released and discharged for over ten years.

Nevertheless, the equity receivership action remains open in this court for some limited purposes. The question is for what purposes.

It is plain to me that these purposes are limited to determining whether or not any frauds may have been committed upon the court through the corruption of its own officers. This is basically not a retention of jurisdiction over the equity receivership per se but the exercise of a power inherent in the court in any event to ferret out and rectify frauds committed upon it. The court cannot be foreclosed from exercising such power by lapse of time, laches, estoppel or technicalities. See Root Refining Co. v. Universal Oil Products Co., 3 Cir., 169 F.2d 514; Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250. The power was exercised by the court subsequent to the consummation of the plan for realization and liquidation only because of the suspicions raised as to the conduct of officers of the court during the course of the receivership. The subsequent proceedings were directed to this purpose only.

This was certainly the purpose Judge Knox had in mind when he designated the special master to hear evidence in connection with transactions of the receivers. It was equally my purpose, and my only purpose, in permitting the continuation of these hearings by the appointment of a new special master.

The orders authorizing hearings did not reopen generally the terminated receivership proceedings nor in any way vitiate the consummated realization plan. The plan remains in full force and effect and the receivership has been terminated except in so far as steps are still being taken by the court to discover and correct any frauds committed upon it.

The basis upon which petitioners rely to sustain jurisdiction of the court to entertain this summary proceeding, while more than a little obscure, seems to be as follows:

Their first claim is that since the Academy of Music lease was an asset of the receivership estate either directly or through ownership by them as trustees of all of the stock of William Fox Realty Corporation, the lessee, the court has jurisdiction in the equity receivership to deal summarily with all questions concerning rights to and obligations arising from this property in its possession or custody.

■ The fact is, however, that all of the assets of the receivership, including this lease, have long since been turned over to the trustees under the indenture of trust filed in the state court pursuant to the plan for liquidation and realization which was confirmed and consummated. These assets have not been in the possession or custody of this court for many years but are vested in the trustees under the jurisdiction of the Supreme Court, New York County. The equity receivership is ended except for the very limited purpose I have mentioned and this court has no jurisdiction to determine summarily rights and obligations relating to property vested in the trustees or in their possession and control.

Petitioners urge, however, that the orders of this court authorizing the presentation of testimony concerning transactions of the receivers give the court jurisdiction to entertain and pass on this summary application. I find no such authority in any of the orders to which petitioners refer. As I have already pointed out, these orders are for the limited purpose of pursuing an investigation of possible frauds committed on the court. There is no suggestion that the respondent lessors have been parties to any fraud. In fact, the petitioners expressly state that they were not. This is merely a controversy between the trustees claiming to have rights under the lease to William Fox Realty Corporation, and a lessor who was not a party to the equity receivership proceedings nor directly concerned in them.

■ The fact that the sale by the receiver of the capital stock of William Fox Realty Company and the Academy of Music lease to Skouras was set aside in the course of the investigation authorized by the court does not aid the petitioners. The recovery of these assets from the purchaser at the sale was made by way of settlement in a proceeding brought upon the theory that a fraud had been committed upon the court by representatives of the purchaser. When the assets were recovered they were immediately and properly turned over to the trustees who had been vested with all the assets of the receivership. The respondent lessors had nothing whatever to do with the sale or with the alleged fraud charged in the proceeding to set it aside. They were not parties to that proceeding and were merely innocent bystanders.

There is nothing in the orders relating to the taking of testimony before the special master which remotely authorizes this summary proceeding.

Nor is this a situation where the court is superintending and enforcing the execution of a plan approved by it and exercising its power to take all proper measures to that end. The issues presented here do not arise between parties to the plan nor do they concern the plan or its execution. They are not within the purview of the power reserved by an equity or bankruptcy court to superintend and enforce the execution of a plan of reorganization or liquidation which in any event is discretionary and should

be sparingly exercised. Cf. Prudence Bonds Corp. v. City Bank Farmers Trust Co., 2 Cir., 186 F.2d 525.

I hold that the court has no jurisdiction over this summary proceeding and that there is no authority to maintain it. This in itself requires dismissal of the petition.

But, even assuming that some discretionary power remained in the court to take jurisdiction of the proceeding and I was disposed to exercise such power, which I am not, it is plain that the petition should in any event be dismissed since it is totally devoid of substantive merit.

Petitioners contend that the theatre and business buildings erected by William Fox Realty Corporation upon the Schinasi fee pursuant to the Academy of Music lease are trade fixtures which are the property of the tenant and which they, as trustees of the tenant's parent corporation, are entitled to remove from the premises at the expiration of the lease. They urge that in view of the economic waste involved in removing the buildings the court in the exercise of its equitable powers should declare that they and the respondent lessors are owners in common of the fee and the buildings and order a sale of the entire premises and an equitable division of the proceeds in the absence of payment to them by the lessee of the fair market value of the buildings.

■■ Generally, title and ownership of structures erected by one person on the land of another is in the owner of the land in the absence of contract rights regulating the interests of the respective parties.[1] Where, however, the buildings are erected by a lessee for trade purposes they have been held to be trade fixtures which, in the absence of provisions to the contrary in the lease, are the lessee's property and removable by him during the term of the lease or within a reasonable time thereafter. This rule is based upon a public policy long ago enunciated to encourage trade and manufacture.

■■ The numerous cases cited by petitioners generally sustain this proposition.[2] However, none of them are in point here. For it is too well settled to require discussion that where there is a lease between the parties the terms of the lease govern and the courts give effect to the intent of the parties as expressed in the lease.[3] The terms of the Academy of Music lease and of the accompanying building agreement leave no shred of doubt here that the parties intended that the buildings erected by the lessee are the property of the lessor, and that the lessee has no right to remove them.

Under the express terms of the lease the lessee is obligated to surrender the premises at the end of the term "including all buildings, improvements, alterations and additions added to the premises by the tenant" "peaceably and without any compensation". This in itself would be sufficient to dispose of the petitioners' contention.[4]

1. See People ex rel. Muller v. Board of Assessors, 93 N.Y. 308, 311.

2. Penton v. Robart, 2 East 88 (Court of Kings Bench, Nov. 23, 1801); Hallen v. Runder, 1 Cr.M. & R. 266 (Exch. of Pleas–1834); Minshall v. Lloyd, 2 Meeson & Welsby 450 (Exch. of Pleas–1837); Ombony v. Jones, 19 N.Y. 234; Precht v. Howard, 187 N.Y. 136, 79 N.E. 847, 9 L.R.A.,N.S., 483; Talbot v. Cruger, 151 N.Y. 117, 45 N.E. 364; Crater's Wharf, Inc., v. Valvoline Oil Co., 2 Dept., 204 App.Div. 840, 196 N.Y.S. 815; Van Ness v. Pacard, 2 Pet. 137, 27 U.S. 137, 7 L. Ed. 374; Wiggins Ferry Co. v. Ohio & M.

Ry. Co., 142 U.S. 396, 12 S.Ct. 188, 35 L.Ed. 1055.

3. See Kutter v. Smith, 2 Wall. 491, 69 U.S. 491, 17 L.Ed. 830; People ex rel. Muller v. Board of Assessors, 93 N.Y. 308, 311; Howe's Cave Ass'n v. Houck, 66 Hun 205, 21 N.Y.S. 40, affirmed 141 N.Y. 606, 36 N.E. 740; People ex rel. Hudson River Day Line v. Franck, 257 N.Y. 69, 177 N.E. 312; Helvering v. Bruun, 8 Cir., 105 F.2d 442, reversed 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864; French v. Mayor of City of N. Y., 16 How.Prac. 220.

4. See In re Eastern Palliament Corp., 2 Cir., 67 F.2d 871, 875.

 Furthermore, the whole scheme and tenor of the lease and building agreement make it so plain as to be beyond cavil that the buildings erected became the sole property of the lessor.

The lessee was given the extended term of forty-two years and an offer of financial help based upon its agreement to erect buildings of a stated minimum value. The building agreement provided that the erection of and full payment for these buildings "are a substantial part of the consideration and inducement to the lessor to enter into and execute this agreement and the said lease bearing even date herewith". The rent reserved in the lease was to be reduced if buildings of a higher cost than the minimum were erected. No change could be made in the structures erected which was substantial or would diminish their value without prior permission in writing from the landlord and the erection of other structures of similar or greater value under the approval and supervision of the landlord and his architect. In the event of loss by fire the insurance money was a trust fund for the lessor to be applied to reconstruction and any excess had to be supplied by the lessee. If condemnation occurred the premises were to be rebuilt, if possible, out of the award for the building. If condemnation occurred after 1926 and the premises could not be rebuilt, the lessee received only a portion of the amount awarded for the value of the buildings which was pro rated according to the number of years remaining in the term, the lessee's interest in the buildings decreasing to zero at the end of the term. Every provision of the lease bearing on the respective rights and obligations of the lessee and the lessor with respect to the erection of the buildings and their disposition confirms the conclusion that they are the sole property of the owner and that, at the expiration of the lease, the lessee has no right or interest in them. There are no provisions which point even remotely to an opposite conclusion.

What the petitioners would have this court do is to ignore the plain terms of the lease and to give their trust a windfall to which it has no conceivable right in law or equity. It needs no further discussion to demonstrate that the petitioners' claim lacks any foundation whatsoever.

In view of what has been said it is unnecessary to pass on the additional grounds for dismissal raised by respondents, such as the failure to make William Fox Realty Corporation a party to the proceeding, or the lack of authority of the petitioners to assert a claim arising only in the right of that corporation as lessee. Nor need I pass on the petitioners' motion to strike defenses in the answer.

The petition is dismissed with costs. Settle order on notice.

