CHICAGO TITLE & TRUST COMPANY,
Complainant,

v.

FOX THEATRES CORPORATION,
Defendant.

Application of Kenneth P. STEINREICH and Leopold Porrino, as Trustees of the Assets which were of Fox Theatres Corporation, and on behalf of the beneficiaries of their trust, comprising the creditors and stockholders of Fox Theatres Corporation, now known respectively as Preferred Participants and Participants of said trust, Petitioners,

v.

STERLING NATIONAL BANK & TRUST COMPANY, as assignee of Frank D. Lisle, Alvin J. Schlosser and Louis A. Mahoney, constituting the Noteholders' Protective Committee for Five-Year Secured 6½% Sinking Fund Gold Notes of Roxy Theatres Corporation, Respondent.

United States District Court
S. D. New York.
Dec. 2, 1959.

**900**

———◆———

Hirson & Bertini, New York City, for petitioners.

Robert Aronstein, New York City, for creditors, Robert Aronstein, David G. Haskins, Arnold A. Hackmyer and Daniel A. Gutterman, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Sterling Nat. Bank & Trust Co. of New York, Samuel J. Silverman, Sidney L. Posel, New York City, Frederick S. Wyle, San Francisco, Cal., of counsel.

FREDERICK van PELT BRYAN, District Judge.

The hoary equity receivership in which this application is made was commenced in this court in 1932. Pursuant to a plan of realization confirmed by the court on January 30, 1939, all assets of the receivership and of Fox Theatres Corporation were transferred to and vested in trustees under a deed of trust for the benefit of creditors and stockholders for the purpose of liquidating, realizing upon and distributing such assets. The deed of trust pursuant to the plan, executed as of February 24, 1939, vested administration and enforcement of the trust in the Supreme Court, New York County. The instrument was filed with the New York County Clerk, and duly designated trustees have been carrying out its terms under the supervision of the New York Supreme Court ever since.

■ In Chicago Title & Trust Co. v. Fox Theatres Corp. (Steinreich v. Schinasi), D.C., 164 F.Supp. 665, I pointed out that the trust has gone on for some nineteen years and that none of the Fox assets have been in the possession, custody or control of this court or its officers since the trust became operative. This court no longer has any jurisdiction over this equity receivership per se. However, since allegations were made that frauds had been committed upon this court in the course of the receivership, through the corruption of its own officers, certain proceedings in connection with the receivership have continued to be conducted in this court in the exercise of its inherent power to ferret out and rectify frauds committed upon it.

None of such allegations of fraud are in any way involved in the present application which concerns a claim of a noteholders' protective committee for five-year secured 6½% sinking fund gold bonds of Roxy Theatres Corporation which was allowed in the sum of $760,000 in the Fox Theatres equity receivership as long ago as 1937.

Petitioners are the trustees of the Fox Theatres realization trust. Sterling National Bank & Trust Co. is named as respondent in its capacity as assignee of the Roxy noteholders' protective committee, and as trustee for such noteholders. In that capacity, Sterling is the holder of a preferred participating certificate in the Fox Theatres realization trust representing the noteholders' protective committee's allowed claim for $760,000. Payments on the claim made from time

to time have totaled $258,400, or some 34% of its face amount.

Now, more than twenty years after the Roxy noteholders' claim was allowed in the equity receivership, and almost as long since the assets of the Fox receivership were transferred to the realization trust under the jurisdiction of the New York Supreme Court, petitioners claim that they are entitled to have this court enter an order in the moribund equity receivership action which (1) adjudges that Sterling and the Roxy noteholder beneficiaries have received full payment, satisfaction and discharge of all claims against Fox Theatres Corporation and are not entitled to any further payment or distribution upon such claims or upon the participating certificate representing them; (2) grants reconsideration of the Roxy noteholders' allowed claim for $760,000, and upon reconsideration directs that such claim and the participating certificate representing it be cancelled and expunged; and (3) directs that Sterling repay to the Fox Theatres realization trust the sum of $258,400 thus far received by the Roxy noteholders on their claim by way of distribution.

Respondent Sterling has answered the petition denying certain of its allegations, alleging that it is not the beneficial owner of the claim for which it holds the participating certificate, and alleging that this court lacks jurisdiction of the subject matter of the petition except in so far as it seeks reconsideration of the claim.

Respondent now moves to dismiss the petition for failure to state a claim upon which relief can be granted.

While its present motion does not properly raise the defense of lack of jurisdiction over the subject matter pleaded in its answer, it is plain to me that this court has no jurisdiction whatsoever over that portion of the application which seeks relief in the nature of a turn-over order for the repayment of monies thus far paid to Sterling and its predecessors on account of the claim allowed in the Fox Theatres receivership. See Chicago Title & Trust Co. v. Fox Theatres Corp.

(Steinreich v. Schinasi), supra. Moreover, I have grave doubts as to whether petitioners' request for reconsideration and expungement of the claim can be even considered by this court at this late date and in the present posture of the proceedings. However, the application for reconsideration is patently without merit and could not be granted in any event. Since all else in the application is dependent upon granting the prayer for reconsideration, disposition of this phase of the application will finally dispose of the whole matter.

The circumstances which led to the allowance of the Roxy noteholders' committee's claim at the sum of $760,000 in the equity receivership are as follows:

In 1927 Roxy Theatres Corporation, a New York corporation, which built and was operating the Roxy Theatre, required further financing. Over 70% of its common stock was owned by Fox Theatres Corporation. An issue of five-year secured 6½% sinking fund gold notes in the principal sum of $2,500,000, to mature on July 1, 1932, was authorized by Roxy and was underwritten by Halsey Stuart & Co., Inc. On July 23, 1927 Fox Theatres Corporation entered into an agreement with Halsey Stuart, the underwriter, that upon any default on the notes by Roxy it would purchase at par, plus accrued interest, all notes presented to it by or on behalf of any noteholder. It thereby became Roxy's guarantor on this note issue.

In 1932 Roxy defaulted on the notes, which were then declared due and payable. At about the same time Roxy went into equity receivership in this court. A group of noteholders organized a noteholders' protective committee, and on behalf of those noteholders who deposited their notes with it made demand upon Fox Theatres to fulfil its agreement and to purchase the Roxy notes so deposited.

By this time Fox Theatres also had gone into equity receivership in this court. Tender of the Roxy notes by the committee to Fox and its receivers for purchase was acknowledged and purchase was refused in August of 1932. As ad-

ditional notes were deposited with the committee similar demands were made and refusals given. In 1937 the committee filed an amended proof of claim against Fox on behalf of noteholders which it represented in the total amount of $1,177,400, plus accrued uncompounded interest of some 32½%.

In the meantime Roxy had passed from equity receivership into a reorganization proceeding under then Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and a plan of reorganization of Roxy had been formulated and appeared certain of approval in substance. It was then for the first time possible to estimate what the noteholders would receive in the Roxy reorganization on account of the obligation of the primary obligor Roxy. In settlement negotiations between the Fox receivers and the noteholders' committee an attempt was made to ascertain with some reasonable degree of certainty the value of what the noteholders might receive in the reorganization so as to determine what the obligation of the guarantor Fox might be. As a result the claim for $1,177,400, plus five years' accrued interest, was settled for $760,000 flat by written stipulation dated March 26, 1937.

This settlement was submitted to a special master appointed to take proof and to report on the allowance of claims, who held a hearing on the settlement. It is quite plain from the minutes of the hearing that the basis of the settlement was the difference between the amount of the claim as filed and the value of what it was anticipated would be received by the noteholders in one form or another under the Roxy reorganization plan. A copy of that plan was before the special master.

Thereafter, by order of July 23, 1937, this court in the Roxy 77B proceedings finally approved the Roxy plan of reorganization and confirmed a special master's report holding that the claims of the noteholders included interest to April 1, 1937.

On August 5, 1937 the special master in the Fox Theatres equity receivership filed a report recommending approval of the settlement with the Roxy noteholders and allowance of the claim against Fox in the amount of $760,000 flat, as provided in the stipulation of settlement between the Fox receivers and the committee of March 26, 1937.

In his report the Fox special master made findings of fact and conclusions of law which, among other things, set forth the origin of the claim, the Roxy plan of reorganization and its approval by the court, and the provisions of the plan with respect to the Roxy noteholders. The report pointed out that under the plan each thousand dollar noteholder would receive, in addition to a small cash payment of $23.79, ten shares of $1.50 dividend cumulative preferred stock of the reorganized Roxy company, entitled upon liquidation to $50 per share and callable at the option of the reorganized Roxy company at $51 per share. The report made it plain that these provisions had been taken into account in the settlement made by the Fox receiver and that since the market value of the stock to be received by the noteholders in the Roxy reorganization was less than 50% of the principal amount of their claim, the settlement was fair and in the best interests of the receivership estate. The master recommended the allowance of the stipulated sum in full settlement of the claim of the committee against Fox, and that Fox should waive any right to file a claim under the plan of reorganization of Roxy for reimbursement of monies paid by way of dividends to the noteholders' committee.

No exceptions were filed to the Fox special master's report and it became final and stood confirmed twenty days after filing pursuant to Rule 66 of the then governing federal equity rules, 28 U.S.C.A.Appendix. By order of September 14, 1937 the court ordered payment of "a first ad interim dividend of 5% of the amount awarded to (the committee)" by "such final determination and adjudication" of the referee.

Apparently the holders of the preferred Roxy stock which was issued to the

noteholders in the Roxy reorganization proceeding have been collecting regularly the $1.50 annual dividend on each share to which they were entitled, and in 1956 the reorganized corporation exercised its option to recall the shares at the price of $51 per share provided in the certificates. It is the claim of the petitioners on this application that the aggregate sums received on the preferred stock so issued by way of dividends and redemption value since the allowance of the noteholders' settled claim in the Fox receivership, has aggregated more than the amount of the noteholders' original claim against the Roxy Theatres Corporation. There is some dispute as to this, and, indeed, some of the petitioners' calculations are very questionable. I will assume, however, solely for purposes of this discussion, that the figures used by the petitioners are correct, and that in fact the holders of the Roxy preferred stock, whoever they may be, by now have found that the value of the preferred stock distributed under the Roxy reorganization plan turned out to be greater than the face amount of the noteholders' original claim against Roxy. Upon this basis the petitioners argue that the noteholders' claim for $760,000, as agreed upon and settled in 1937, should now be reconsidered and expunged, that it should be adjudicated that the noteholders have been paid in full on this claim, and that they should be required to pay back to the Fox realization trust all monies which they have already received by way of Fox dividends.

■■ To support this conclusion the petitioners make an ingenuous argument to the following effect. They say that the original obligation of Fox Theatres to the Roxy noteholders was that of a guarantor and that the claim in the Fox receivership was based upon that guarantee. They then cite the well settled proposition that in no case can a claimant in a bankruptcy or receivership proceeding recover more than the full amount of his claim, citing Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640; In re United Cigar Stores Co., 2 Cir., 73 F.2d 296; Prudential Ins. Co. of America v. Land Estates, 2 Cir., 110 F.2d 617. They claim that the Roxy noteholders, by virtue of the receipt of the Roxy preferred stock in the Roxy reorganization and the dividends paid thereon, have by now received more than the face amount of both their original and allowed reduced claim against Fox as guarantor. From this they conclude that there is not only a complete discharge of all the claims against Fox but that the Fox trust is entitled to recover back any amounts which it has paid on account of the claim against Fox as settled and allowed in the substantially reduced amount.

This argument is utterly fallacious. It disregards entirely the settlement of the noteholders' claim in the Fox receivership for $760,000 made in 1937 and the basis of that settlement. Petitioners are apparently of the view that because the original claim of the noteholders' committee for $1,177,400 plus interest was based on an obligation of Fox as guarantor and not as principal debtor, the claim as settled and allowed in the reduced sum of $760,000 was in substance also a mere guarantee by which the Fox receivership undertook to make up any difference between what the Roxy noteholders might eventually realize on their Roxy preferred stock and from other sources in the Roxy reorganization and the face amount due upon their notes representing the original debt.

That is a complete misconstruction of the terms and nature of the settlement which resulted in the allowance of the noteholders' claim for $760,000. It is beyond cavil that the settlement contemplated an evaluation of the amount it was anticipated that the noteholders would receive from the Roxy reorganization and a determination of the balance that would therefore be due from the guarantor Fox. This was the sole and only basis of the settlement and the amount of $760,000 in the allowed claim as settled plainly represented this difference and nothing else.

At the time of the settlement it was in the interests of the Fox receivership estate that the total amount of claims against it be finally fixed. The value of the preferred stock to be issued by the reorganized Roxy Corporation was highly doubtful to say the least. No more could be done at that point than to make a reasonable evaluation of the worth of what the Roxy noteholders would receive from Roxy, their principal debtor, and to allow their claim for any deficit against Fox as guarantor. This is what was done in the settlement negotiations resulting in the stipulation of settlement.

When the claim was allowed in the Fox receivership on that basis the rights of the respective parties were finally fixed and adjudicated. The noteholders were allowed an unconditional claim against Fox in receivership for $760,000, and were entitled to receive whatever dividends might be paid on that claim. They also were entitled to receive preferred stock and incidental benefits to be distributed under the Roxy plan of reorganization. The obligations of the principal, Roxy, and of the guarantor, Fox, to the noteholders were thus both fully discharged. Fox and its receivers had no further interest of any kind in what the noteholders received in the Roxy reorganization and the noteholders were entitled to dispose of any property they so received for their own account as they saw fit.

The noteholders assumed the risk that their preferred stock in the reorganized Roxy company might have turned out to be worthless, as it well might have. If it did turn out to be worthless they certainly would have had no additional claim against Fox beyond the $760,000 which was agreed upon in settlement. On the other hand, the noteholders were also entitled to any accretion in the value of the stock which they retained in their own hands, and to the payment of continuing dividends thereon. Fox and the Fox receivers had no further interest in or concern with these securities.

The total amount of the noteholders' claim against Fox was thus finally fixed

and adjudicated by the approval of a settlement fully fair to all parties and found to be so by the court. The Fox receivership had the benefit of a final adjudication as to its liability on these obligations and avoided what was likely to be an extensive and burdensome litigation, with the consequent uncertainty for a long period as to the total amount of claims allowed and paid.

All this is abundantly clear from the minutes of the hearing on the settlement before the special master, from the special master's report and from the stipulation of settlement itself.

Petitioners refer to language in the special master's report which they urge supports their interpretation of the settlement. There is no need to discuss that language. The petitioners have lifted it out of context and seek to ascribe to it a meaning and significance which it patently does not possess. When the language is read in context with the rest of the report it is more than plain that the special master, in approving the settlement, fully understood that it contemplated an allowance of an unconditional claim for $760,000 in favor of the noteholders' committee representing the balance due from Fox as guarantor, over and above the value of what was being received by the noteholders from Roxy, the principal debtor, and that the obligation upon the allowed claim was an absolute one and not a guarantee, as the petitioners contend.

There is no merit whatsoever to the petitioners' claim for reconsideration of the noteholders' proof of claim, much less for its expungement, or for an adjudication that the Sterling participating certificate in the Fox realization trust has been satisfied in full. Nothing has been shown which would remotely furnish grounds to reopen what is tantamount to a final judgment of this court entered over twenty years ago.

This conclusion makes it unnecessary to go further. However, some additional facts might be noted which indicate that the position which petitioners take here could not possibly have been that contem-

plated by the settlement agreement upon which the claim in question is based.

Sterling is not the beneficial owner of the claim represented by the participating certificate. It is merely a trustee for the noteholders, largely for the purposes of acting as a conduit for the distribution of dividends received on the claim. In that capacity it issued transferable certificates of interest in the claim against Fox to the holders of notes deposited with the noteholders' committee. Many of the certificates of interest in the claim against Fox have been transferred by the noteholders and are now in the hands of different holders. Sterling has distributed dividends received by it from Fox to the holders of such certificates of interest at the time of the distribution.

Moreover, the preferred stock of the reorganized Roxy Corporation was freely transferable and there have been a large number of transfers of the stock to persons who are presumably bona fide purchasers for value. There was, of course, no obligation, express or implied, on the noteholders who initially received the Roxy preferred stock to hold it for any period and no restriction whatsoever on their right to dispose of it. It would be absurd to suppose that the Fox receivers who negotiated the settlement, or the court which approved it, ever contemplated that such a situation involving the rights of bona fide assignees of stock or of certificates which had no restrictions on their face, as well as of any noteholders who chanced to retain the stock or certificates, should be unscrambled by an order entered in such a proceeding as this twenty years later.

One further question remains.

 Respondent asks that it be allowed counsel fees on this application to be taxed as costs against the Fox realization trust on the ground that the proceeding is so totally devoid of merit as to be a frivolous and vexatious suit. Respondent points out that it is acting on behalf of numerous holders of certificates of interest who are its beneficiaries, many of whose interests are small. Its counsel fees would have to be charged against such beneficiaries and thus would cut into any future benefits to which they might be entitled from the Fox realization trust.

It also points out that there may be an application by petitioners for counsel fees in connection with this petition which would be chargeable against the Fox realization trust. It urges that its beneficiaries will be compelled to bear the burden of counsel fees twice, both as participants in the Fox realization trust on the one hand and as distributees of dividends under the Sterling trust on the other.

While this argument is an appealing one I am not persuaded that counsel fees should be awarded respondent here.

The federal courts may grant counsel fees as part of the taxable costs in appropriate cases as part of their historic equity jurisdiction. Apart from any question of power, however, it is settled equity practice that counsel fees will not be allowed except in very exceptional cases. Helene Curtis Industries, Inc. v. Sales Affiliates, 2 Cir., 233 F.2d 148, 167; Gold Dust Corp. v. Hoffenberg, 2 Cir., 87 F.2d 451, 453; American Automobile Ass'n v. Spiegel, D.C.E.D.N.Y., 128 F. Supp. 794; 6 Moore, Federal Practice (2d ed.) par. 54.77(2).

There is no doubt that the present application is devoid of merit. However, it cannot be said that it was brought in bad faith or merely for purposes of vexation or harassment. In my view this is not such an exceptional case as to warrant the award of counsel fees to the respondent to be taxed as costs against the Fox realization trust.

 The question of whether counsel fees will be allowed to the petitioners out of the Fox realization trust for services in this proceeding is not one for this court but concerns the administration of the Fox trust under the supervision of the New York Supreme Court. If any application be made to that court for an allowance of counsel fees to petitioners for this proceeding, no doubt that court, in its wisdom, will fully consider what has been said here concerning the merits

of this application, as well as the possibilities of double burden upon the Sterling beneficiaries because of it.

Respondent's motion to dismiss the petition is in all respects granted.

Settle order on notice.