CLE–WARE RAYCO, INC. and FDI, Inc., Plaintiffs,

v.

Bruce J. PERLSTEIN, Defendant.

No. 75 Civ. 1132.

United States District Court, S. D. New York.

March 31, 1976.

Marshall, Bratter, Greene, Allison & Tucker, New York City, for plaintiffs; Charles H. Miller, Stephen B. Camhi, New York City, of counsel.

Sohn & Gross, Spring Valley, N. Y., for defendant; Joshua Gross, Spring Valley, N. Y., of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs move this Court for an order adjudging defendant in contempt for violation of a preliminary injunction. Plaintiffs, Cle-Ware Rayco, Inc. and FDI, Inc., are owners of the trademark and servicemark "Rayco." Defendant, Bruce J. Perlstein, is a former franchisee of plaintiffs. This Court issued a preliminary injunction ordering Perlstein to deliver all Rayco signs, stationery, labels and the like to plaintiffs and prohibiting him from using the name Rayco. The opinion setting forth the reasons for the injunction is reported at 401 F.Supp. 1231 (S.D.N.Y.1975).

A hearing was held a month and a day after the filing of the injunction. It was clear from the proof presented that Perlstein had not fully complied with the injunction. Perlstein, himself, testified that he was still using the Rayco name on invoices, envelopes, and checks. A large Rayco sign and at least two indoor signs had remained on display until hours before the hearing.

At the hearing, Perlstein indicated his willingness to comply with the injunction and testified that he is presently doing business under the name "Sparr Auto Center." His tardiness in removing the signs according to the defendant stemmed in part from discussions with representatives of the plaintiffs concerning the possibility of sell-

ing his business to an individual who would be acceptable to the plaintiffs as a franchisee. Those discussions ultimately proved fruitless.

In any event, Perlstein's admitted display and use of the Rayco name is a clear violation of this Court's injunction. Accordingly, the defendant is adjudged in contempt and is fined $2,500 plus costs (not to include attorney's fees). At first glance this penalty may seem harsh, but it is done with a view not only to the contumacious conduct but to the manner in which it was done and the intent shown by defendant's subsequent conduct.

Plaintiffs have moved for a preliminary injunction against the removal, destruction or sale of automobile lifts, compressors, lighting fixtures, shelving and other fixtures from the location of the former franchise. Plaintiffs are the lessees of the premises and have, in turn, subleased them to defendant in a sublease dated February 16, 1970.

At a separate hearing, it was established that six of the seven automobile lifts which were located on the premises had been removed and are now in the possession of Ira Conklin & Sons. In the process of removal, the concrete floor in which they were embedded was severely damaged.

Both sides candidly admit that the focal point of the controversy is the ownership of these lifts. Four of the lifts were installed prior to defendant's tenancy. The remaining three were installed by defendant.

Defendant claims that the four original lifts are his personal property by virtue of a purchase agreement with the prior tenant, B.M.S. Trading Corp. In support of that contention he submits a Bill of Sale dated December 30, 1969. As to the three subsequently acquired lifts, there is apparently no dispute that Perlstein purchased and installed them. The lifts were financed by a loan from the Nanuet National Bank for which they served as collateral. The loans have since been paid in full.

Plaintiffs contend that these facts are irrelevant. It is their position that the lifts, compressors, lighting fixtures, shelving and the like have become their property under the terms of the sublease. Paragraph 4(b) of the agreement provides that:

"Tenant, at its own expense, may, in a good workmanlike manner, make such additions or alterations to the improvements on the premises as he deems necessary in the conduct of this business, providing such changes receive the prior written approval of the Lessor. Any improvements made by the Tenant, unless otherwise agreed to in writing, shall become the property of the Lessor at the expiration of the lease term."

Thus it must be decided whether the items in question are "improvements" within the meaning of the sublease. The issue is not novel. Mr. Justice Davies of the New York State Supreme Court was faced with a similar question in *French v. City of New York,* 16 N.Y.Prac.Rep. 220 (1858). Although that set of facts involved burners, benches, a glass case, lumber, and other assorted items, the controlling principles of law are the same. In *French,* the lease contained a provision similar to the one quoted above. Prior to the expiration of the lease the lessees sought to remove the property but were restrained by Court order. The lessees sued to recover the items retained by the lessor. The reasoning of the Court, in denying the lessor the right to recover the property, is particularly appropriate to this case.

"The question in this case is not what are fixtures which a tenant is at liberty to remove on the expiration of his lease? but what did the lessees covenant with the lessors they would surrender and suffer to remain on the demised premises on the termination of the lease? The covenants of the lease are, that on the last day of the term the lessees will surrender the demised premises, 'and all the improvements that may have been placed thereon by the said parties of the second part' (the lessees); 'and which improvements are to belong to the said parties of the first part' (the lessors), 'and all of which are to be surrendered up in as good

state and condition as reasonable use and wear thereof will permit, damages by the elements excepted.'

"The terms of the lease are, therefore, very broad, and would seem to comprehend all and every erection, improvement or addition made, put or erected upon said premises during the continuance of the lease. It was manifestly in contemplation of the parties to the lease, at the time of making it, that extensive improvements, changes or alterations were to be made by the lessees to adapt the demised premises to such uses and purposes as they might wish to put them to, and that these alterations and improvements were to be made at the expense of the lessees.

"The lessors consented to such alterations and improvements, on condition that at the expiration of the lease they were to belong and become the property of the lessors; and the lessees, in consideration of such permission to make alterations, repairs and improvements, on the expiration of the lease, to surrender them up in as good state and condition as reasonable use and wear thereof would permit.

"The covenant is to surrender *all* the improvements, that may have been placed thereon. Improvements, clearly, in the lease here used, embrace every addition, alteration, erection or annexation made by the lessees during the demised term, to render the premises more available and profitable, or useful and convenient to them. It is a more comprehensive word than 'fixtures,' and necessarily includes it, and such additions as the law might not regard as fixtures. It would be difficult to select a more comprehensive word; and where the parties say that all improvements which may be placed on the premises shall belong to the lessors, it is difficult to say what, if anything, would be excluded."

*Id.* at 221–22. See also *Chicago Title & Trust Co. v. Fox Theatres Corp.,* 164 F.Supp. 665, 671–72 (S.D.N.Y.1958).

In the present action, the parties have made their own bargain: the *quid pro quo* for the sublessee's right to make improvements is that they become the property of the sublessor at the end of the lease. Therefore, as between the parties to this action, the lifts installed by Perlstein are the property of the sublessor. The same may be said of any other personal property which Perlstein affixed to the realty. At trial the parties may introduce proof as to which items, other than these lifts, fall within the term "improvements." It is clear that the removal of these lifts with the concomitant destruction of the floors and subflooring of the premises, cannot be construed as the return of the premises "with improvements."

The lifts installed by the former tenant and allegedly sold to Perlstein are in a somewhat different posture. The question ultimately turns on whether the seller had title to the property. Since the agreement between the former tenant and its sublessor is not before this Court, I am unable to determine whether these lifts were intended to be the personal property of the seller. It is altogether possible that by virtue of lease provision similar to that in Perlstein's lease, these lifts became the property of the lessor. The question must be left for trial.

■ The plaintiffs also seek to enjoin further damage to the premises caused by attempts to remove improvements. It is undisputed that the concrete floor in which the lifts were embedded was partially destroyed. In support of its request for an injunction, plaintiffs point to paragraph 4(a) of the sublease which states in part that:

"Tenant shall take good care of the premises and equipment and leave same at the end of the term in as good condition as when received, ordinary wear and tear, damage by fire or the elements and unavoidable casualties excepted."

It is clear to me that defendant's actions in ripping the lifts out of the floor, without any attempt at repair, is a clear violation of the sublease. It is difficult to view an

intentional six foot-plus hole in a concrete floor as "ordinary wear and tear . . ."

■ In this Circuit a preliminary injunction will issue only upon a clear showing of either:

"(1) probable success on the merits *and* possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973).

■ On the law and on the facts, plaintiffs have demonstrated a probability of success in this action. The destructive manner in which property has been removed from the premises and the defendant's poor financial condition which led to the termination of the franchise, convince me that there is a possibility that plaintiffs would be irreparably injured if defendant were not enjoined from removing the improvements pending the outcome of the litigation. A preliminary injunction will, therefore, issue.

The defendant is adjudged in contempt and fined $2,500 plus costs.

This opinion constitutes findings of fact and conclusions of law within the meaning of Rule 52, Fed.R.Civ.P.

Settle order on four days' notice.