THE PEOPLE ex rel. ALEXANDER T. VAN NEST et al., Appellants, *v.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS FOR THE CITY AND COUNTY OF NEW YORK, Respondents.

The N. E. Bank held a lot in the city of New York under a lease which contained a provision giving the lessor an option, at the expiration of the lease, to pay for a building erected on the lot by the lessee or to renew the lease for a further term ; and, if so renewed, gave the lessee the right, at the expiration of the term, to remove the building. The building was erected by the bank for its own use, at an expense of $65,`00 ; so much of the capital of the bank being invested therein. The property was assessed to the bank as real estate at $70,000. The tax-commissioners, in assessing the stockholders of the bank, as authorized by the act of 1866 (chap. 761, Laws of 1866), refused to deduct anything from the assessed value of the shares on account of such investment. *Held*, error ; that for the purposes of taxation, within the purview of said act of 1866, the building was real estate of which the bank was the owner, and it was taxable to the bank as real estate ; that the real estate, the assessed value of which is to be taken as a basis for the proportionate deduction from the value of the shares, is the real estate of the bank; that therefore the assessed value of the building, and that only, should have been deducted ; that such assessed value was not necessarily the cost of the building ; it could not be more, as no more of the capital of the bank was invested, but it might be less ; that as the lot and building were assessed together at $70,000, it could only be determined by the officers making the assessment what proportion of the assessment was for the building. Proceedings, therefore, remitted for modification of assessment.

*People ex rel. Abrahms* v. *Comrs. of Taxes, etc.* (Mem.), 52 N. Y., 659, distinguished.

(Argued March 10, 1880 ; decided April 6, 1880.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of defendants, entered upon an order dismissing a writ of *certiorari* herein, brought to review the proceedings of defendants in assessing the relator as a stockholder of the National Exchange Bank, upon the value of his shares of stock therein.

The facts are set forth sufficiently in the opinion.

*Michael Canfield,* for appellant. The respondents erred in refusing to make the deduction asked for by the relator. (Laws 1866, § 1, chap. 761; 6 Edmund's Statutes, 96; id., 826.) The interest of the lessees under the lease in question, is real estate for the purpose of taxation. (Laws 1863, chap. 240; Laws 1866, chap. 761, § 1; *Trustees of Elmira* v. *Dunn,* 22 Barb., 402; *Averill* v. *Taylor,* 4 Seld., 52.)

*J. A. Beall,* for respondents. The relator was not entitled to the reduction claimed. (3 Kent's Com., 401; *Westervelt* v. *People,* 20 Wend., 418; *Mayor* v. *Mabie,* 3 Kern., 159; R. S., tit. 3, part 2, chap. 6, § 6; id. [5th ed], p. 905; *People ex rel. Abrams* v. *Comrs.,* 52 N. Y., 659.)

CHURCH, Ch. J. The question involved is whether the respondents erred in refusing to make any deduction, under chapter 761 of the Laws of 1866, for the assessed value of the lot and building occupied by the bank. The facts appearing by the return, are that the New York National Exchange Bank held the lot under a lease from Trinity church. The holding is under a renewal of twenty-one years, with an option at the expiration of that time for the lessor to pay for the building, or renew the lease for a further term of twenty-one years, and if renewed, the lessee at the expiration of the term has the right to remove the building ; the lease provided that the lessee should pay all taxes and assessments upon the lot. It appears also that the bank erected the building at an expense of $65,000, and invested

that amount of its capital therein. It also appears that the property is assessed to the bank as real estate, at the sum of $70,000. The stockholders claimed that the whole of this sum should be deducted; the commissioners refused to make any deduction on account thereof.

We are of opinion that this property is held by the bank, and as such is taxable as real estate to the extent of the assessed value of the building. The case of the *People ex rel. Abrams* v. *Comrs. of Taxes, etc.* (52 N. Y., 659), is not decisive, although the General Term were justified in so regarding it from the omission in the report to state the point upon which it was decided. In that case the return did not show the facts which entitled the relators to the deduction, and a majority of the court held that resort could not be had to the petition for that purpose, and as no error appeared from the return, the judgment was affirmed. The assessment in that case was to the owner of the lot, and not to the bank, and the terms of the lease did not appear. The opinion delivered by Folger, J., was not disagreed to upon the merits of the general question as presented in this case. We think that the assessed value of the building only should be deducted, but it does not follow that such assessed value is the cost of the building. It cannot be more because no more than that amount was invested, but it may be less, because the cost is not the criterion of assessed value.

The whole lot and building was assessed at $70,000. From this we cannot determine that the lot was assessed at only $5,000, and the building $65,000. The deduction should be made of such an amount as the building is assessed at in connection with the lot, and this can only be determined by the officers making the assessment. Upon the merits I adopt so much of the opinion of Folger, J., in the *Abram's Case* (*supra*), as covers the question argued in this case as follows: "*Second.* The real estate, the assessed value of which is to be taken as a basis for the proportionate deduction from the value of the shares of stock, is to be 'the real

estate of the bank.'  "That which is claimed to be the real estate of the bank in this case, is a building put up by the bank for its own use, and used by it, upon the land of one Southwick the owner in fee.  The land is held by the bank on a lease for years.  By the terms of the lease, as is claimed by the relators on their points, the building belongs to the bank.  The lease is not set forth in the papers, so as to show just what are its provisions in relation to the building.  But the allegations of the petition are, 'that such building, so erected upon said lot, by the terms of the lease during the continuance of the term, is the property, and belongs to the said bank.'

"The interest of the bank in the land, as a general proposition, is that of one who holds a term for years.  This is a chattel real.  It is personal estate, and not real.  At common law the term real estate does not include anything short of a free-hold (2 Kent, *342 ; id., *401).  By the Revised Statutes, estates for years shall be chattels real.  (1 R. S., p. 762, § 36, p. 754, § 27;  *Westervelt* v. *The People*, 20 Wend., 416;  *The Mayor* v. *Mabie*, 13 N. Y., 151.)

"So, too, the interest in the building put up upon the lands of another by agreement, is, as a general rule, personal property.  (*Smith* v. *Benson*, 1 Hill, 176.)  And the right to remove, ends with the expiration of the term of the lease. (*Kutter* v. *Smith*, 2 Wall. [U. S.], 491.)

"But we are now dealing with a question of taxation and assessment, and with a statute which is one of a body of laws upon that subject, which must all be considered together, and each of which must receive a construction which shall make it harmonious with the whole.

"The Revised Statutes declare that all 'land' shall be liable to taxation (1 R. S., p. 387, § 1), and that the term 'land' shall be construed to include the land itself, and all buildings erected upon the same, and the term 'real estate,' when used in the chapter, shall be construed as meaning 'land.'  (Id., § 2.)  The chapter is 'Of the assessment and collection of taxes.'

"We must consider that the same legislative intent runs through all legislation on the same subject, and that the term 'real estate,' in the law of 1866, includes within it all land, and all buildings upon land. When this lot of Southwick is to be assessed, the building upon it is to go with it as land, and its value is to add to the value of the land, and the value of both to become the assessed value of the lot, and the land and the building for such purpose are real estate.

"For the purpose of taxation, then, and within the purview of this act of 1866, the bank is the owner of real estate, being the building, which is by the effect of the statutes assessed as real estate.

"We have in effect already passed upon this question in *The People ex rel.* v. *Cassity* (46 N. Y., 46). We held there that the track, ties, and rails of the relators' road were for the purposes of assessment and taxation, land, real estate, real property. The track, etc., were laid down in the highway, and the relators had but a right to use the highway for passage to and fro over that track. The relators' charter ran for a limited period, and so of course was its right of way and its interest in the land limited as to time. But we held, that buildings and other articles affixed to the earth, are, in the view of the assessment laws, land, though not owned and held in connection with the ownership of a fee in the soil.

"There the assessment was to the name of the relators, the railroad corporation. Here the assessment of the land with its enhanced valuation by reason of the building is to Southwick, the owner of the fee of the lot. But by provision in the lease, the tax is paid by the bank. And so it will be in all cases. The owner of a lot letting it with a right to his lessee to erect buildings upon it, will also protect himself by some stipulation in the lease against the increased taxation, and will in effect put the payment of it upon the lessee. So that, practically, it is the same as if the assessment were to the lessee of the lot and the owner for the term of the lease of the building.   *   *   *   *   *

" The meaning of the Legislature was, I think, that where a portion of the capital of the bank was changed from money into real estate, so that no use or profit was or could be had of it as money, that so much of the value of the capital as was thus locked in real estate, should not go on to the assessment-roll as personal property.

" The object was not to inflict double taxation, while subjecting all assessable property to taxation once, and as the capital which had been expended in land, or which had added to the value of land by putting buildings upon it, was liable to assessment in that shape, it should not be assessed in another. I have no difficulty in holding that the capital of the bank to the value of the building was, within the meaning of this act, invested in real estate. It has been suggested that when the lease expires, the capital will still be invested in the building if this view is correct, and should still be the basis of a deduction from the value of the shares. But when the lease ceases, the bank will cease to own the building as real estate, and so that requirement of the act will not be met."

The judgment should be reversed, and the proceedings remitted for a modification of assessment.

. All concur ; Folger, J., writing memorandum as follows :

" I concur in the result of the opinion just read, and in the argument of it. I will add, that in the *Abrams Case* mentioned in the opinion, in my judgment the return of the commissioners did so refer to the petition therein as to make the material allegations of it a part of the return, and so present to the court the very state of facts which are now passed upon as calling upon the commissioners to re-assess in favor of the relator."

Judgment accordingly.