THE PEOPLE, ex rel. OTTO C. MULLER et al., Appellants, v. THE BOARD OF ASSESSORS OF BROOKLYN, Respondent.

Parties may, by contract, so regulate their respective interests in real estate that one may be the owner of the buildings and the other of the land.

In such case each interest may be assessed to its owner, and an assessment of the buildings as real estate is proper.

Where a lessee is the owner of the buildings upon the demised premises, the fact that the lessor has, by the lease, a right of re-entry in case of non-performance by the lessee, does not affect his present right in the buildings, or the right to assess them to him.

The B. B. Society leased certain lands to relators for a specified term, with covenants of renewal from term to term ; the lessor having the privilege at the expiration of any term, to resume possession upon paying the lessees the appraised value of the buildings erected by them upon the premises. The lessees covenanted to pay as rent a certain percentage on the appraised value of the land alone, and to erect thereon buildings as specified. The real and personal estate held by the lessor under its charter is by statute (Chap. 330, Laws of 1846) exempted from taxation save for local improvements. *Held*, that the buildings erected by the relators, in pursuance of their covenant, were not exempted from taxation, and were properly assessed to them as real estate.

(Argued June 22, 1883 ; decided October 2, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order

1883.] People, ex rel. Muller et al., v. B'd of Assessors. 309

Statement of case.

made September 12, 1882, which affirmed a judgment of Special Term affirming the proceedings of the defendant in assessing to relators as real estate certain buildings erected by them upon lands leased to them by the trustees and associates of the Brooklyn Benevolent Soeiety, which proceedings were brought up for review by *certiorari.*

The material facts are stated in the opinion.

*J. W. Gilbert* and *Thomas H. Rodman* for appellants. As the buildings were erected on the land of the society, they *prima facie* form a part of the realty. (*Smith* v. *Benson*, 1 Hill, 176 ; *Eastman* v. *Foster*, 8 Metc. 19, 20 ; *Loughran* v. *Ross*, 45 N. Y. 792.) As a rule, exemptions from taxation are to be strictly construed. (*Buf. City Cemetery* v. *Buffalo*, 46 N. Y. 506.) Statutes are to be read according to the most natural and obvious import of their language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. (*People* v. *N. Y. C. R. R. Co.*, 13 N. Y. 78 ; *McCluskey* v. *Cromwell*, 11 id. 593 ; *State of New Jersey* v. *Wilson*, 7 Cranch, 164.) The covenant to pay ordinary taxes does not confer the right to tax. ( *Williams* v. *Pritchard*, 4 T. R. 2 ; *Eddington* v. *Borman*, id. 4.)

*John A. Taylor* for respondent. The statute in question being exemptive in its character will cover nothing not necessarily within its terms. (*People, ex rel. Ins. Co.*, v. *Comm'rs*, 76 N. Y. 77; *People, ex rel. R. R. Co.*, v. *Comm'rs*, 82 id. 464; *Tucker* v. *Ferguson*, 22 Wall. 575; *Erie R. Co.* v. *Penn.*, 21 id. 499.) The property in question being without the exemption provided by the statute, although standing upon land owned by the benevolent society, is liable to taxation as the "land" of the relators. (1 R. S. 360, §§ 1, 2 ; *People, ex rel. D. & F. R. R. Co.*, v. *Cassity*, 46 N. Y. 46; *Smith* v. *Mayor*, 68 id. 552 ; 80 id. 573 ; *People, ex rel. N. Y. El. R. R. Co.*, v. *Comm'rs*, 82 id. 459.)

Ruger, Ch. J.  It is claimed by relators herein that certain buildings rented by them under contracts upon the land of the Brooklyn Benevolent Society are exempt from assessment and taxation by virtue of the provisions of chapter 330 of the Laws of 1846, which exempts the real and personal property held by said society under its act of incorporation from all taxation whatsoever, except for local improvements, so long as its revenues shall be disposed of according to the directions of their charter.

The relators having erected buildings upon the lands of said society, under contracts, by which, in effect, they are to have perpetual possession of the property upon paying a certain annual rent, apportioned according to the value of the land alone, unless the said society at certain fixed periods, of twenty-one years each, shall elect to re-enter upon such property, in which case it may do so upon paying to the relators the appraised value of their erections, bring this *certiorari* from the determination of the assessors assessing their erections and claim the benefit of the exemption extended by the act to the benevolent society.

It cannot be said that this exemption, if allowed, in any way benefits the society in question, but still it is claimed that the act should be so construed that the relators shall enjoy its benefits, although such was not the intention of the act, and to which they now seem to be in no way equitably entitled.

The leases under which the relators occupy the premises in question were originally executed by the society to the lessees in 1852, and at the expiration of their respective terms were renewed with all of their original covenants. Their provisions are long and minute and many of them unimportant, so far as the questions under discussion are concerned.

It will, therefore, be convenient to describe them according to their legal effect, rather than to repeat their literal terms.

The lessors demised certain lands in Brooklyn, held by them under their act of incorporation, to the lessees at a fixed annual rent, for an original term of eighteen years, with covenants of renewal. It was provided that the lessees should at their own

expense erect substantial brick houses upon each of the lots within two years from the date of the lease, and that the lessors should, at the expiration of each term thereafter, either renew the said lease for periods of twenty-one years upon an annual rent to be fixed by a percentage upon the appraised value of the land, exclusive of buildings, or should, upon resuming possession of the lands, pay to the lessees the appraised value of their erections.

The right of re-entry was also given to the lessors upon the non-performance by the lessees of their covenants, and the lessees covenanted to pay all of the ordinary taxes upon the property.

Under these leases it was optional with said society, at the periods therein prescribed, to become the owner of the buildings in question upon payment of the stipulated price, and in the absence of such an election on the part of the lessors they remained the property of the lessees, or their assigns, with the right of possessing the lands of the lessors for the purposes of their enjoyment.

The title and ownership of permanent erections by one person upon the land of another, in the absence of contract rights regulating the interests of the respective parties, generally follows and accrues to the holder of the title of the land, but it is perfectly competent for parties by contract to so regulate their respective interests that one may be the owner of the buildings and another of the land. (*People, ex rel. Van Nest,* v. *Comm'rs,* 80 N. Y. 573; *Smith* v. *Benson,* 1 Hill, 176.) Whether their respective interests under general principles of law, be termed real estate or personal property is entirely immaterial to the question under discussion. The only inquiry at present is whether a several interest may be owned by different persons in the same premises which may be assessed to its several owners.

This question has been recently quite frequently decided in this State, and is no longer open to debate. (*People* v. *Van Ness, supra; People, ex rel. D. & F. R. R. Co.,* v. *Cassity,*

46 N. Y. 46 ; *People, ex rel. N. Y. El. R. R. Co.,* v. *Commissioners of Taxes,* 82 id. 460.)

It remains to inquire whether by the lease in question the relators have a legal interest in the buildings erected by them, which the law will regard as property, and to the possession and enjoyment of which they are lawfully entitled.

They are now in possession of the property rented by them and have been for a period of upwards of twenty-five years, subject only to the annual payment of ground rent to their lessors. By their lease they are entitled to retain this possession for all time, unless in the meanwhile their lessors elect to pay for their property, and thus terminate their ownership.

The lessees have simply entered into an executory contract of sale of their buildings, optional with their vendees as to whether it shall be executed at some future time, or the erections shall continue to be possessed by and remain the property of the lessees.

Until the exercise of this option on the part of the lessors the buildings undoubtedly continue the property of the lessees with all of the rights and obligations which pertain to such ownership. The circumstance that the interest of the lessees may be forfeited for any cause by their own act does not affect the status of the property as to its present ownership. In a general sense all property is liable to be forfeited in some way through the acts of the owners, but this fact does not affect the title to the property until the cause of forfeiture be committed and the penalty enforced. Conditions more or less onerous are frequently inserted in conveyances of property, but when a grantee enters into possession of the property conveyed and while he continues in possession he is the legal owner of whatever the conveyance purports to grant to him.

The mere existence of a clause in a lease imposing the penalty of forfeiture for certain described causes does not change the legal interest of the tenant in the property demised. We conceive also that the insertion in the lease of a clause giving a tenant the right to remove erections made by him at the expiration of his term presents no legal distinction between

such a contract and one where the lessor, by the terms of the lease, can acquire ownership of such erections only by paying therefor. In such case the right of removal is implied by law upon non-compliance by the lessor with the conditions of the lease. In one case the right is expressly secured, and in the other it follows, as a necessary implication, from the conditions of the contract. We are, therefore, unable to distinguish this case from *People, ex rel. Van Nest,* v. *Comm'rs, etc., supra,* and must hold that it is governed by the principles therein determined.

It is conceded that under the definition of the term "land." as laid down in our statute regulating assessments for purposes of taxation (2 R. S. [7th ed.] 981, §§ 1, 2), this property was properly assessed as real estate to the relators.

We have, therefore, arrived at the conclusion that the interest of the relators in the property assessed does not come within the letter of the statute exempting the property of the Brooklyn Benevolent Society from taxation. We think they are very far from coming within its spirit and meaning, and if necessary should feel constrained to give a rigorous construction to the act to prevent its escape from those burdens of taxation which become less onerous according to the equality with which they are distributed over the community at large.

The judgment should be affirmed.

All concur, except Andrews, J., absent.

Judgment affirmed.