In the Matter of the NATIONAL COLD STORAGE Co., INC., Respondent, v. WILLIAM E. BOYLAND et al., Constituting the Tax Commission of the City of New York, Appellants.

First Department, April 19, 1962.

*Daniel L. Cammarano* of counsel (*Edward J. McLaughlin* with him on the brief; *Leo A. Larkin, Corporation Counsel*), for appellants.

*William A. Moore* of counsel (*Ralph E. Reynolds* with him on the brief; *Choate Ronalds Reynolds & Hollister,* attorneys), for respondent.

BREITEL, J. Involved is whether some six buildings, part of a complex of seven buildings, of which petitioner tenant is the owner according to leases under which it holds, are taxable as real property. The underlying land is not owned by the tenant, but by The Port of New York Authority, and is tax exempt by virtue of statute and certain agreements between the landowner and the city.

Special Term, finding that the tenant during the term of the leases had no right of removal, held that the tenant was not the owner of the buildings and they were not taxable as real property. This was held despite express provision in the leases that the tenant, on certain conditions which have been satisfied, was the absolute owner of the buildings. The city has appealed from the determination sustaining petitioner's position and granting its petition brought under article 78 of the Civil Practice Act.

The order should be reversed and the tenant's petition dismissed.

It is not true, as a matter of law, in order to sustain a separate property interest in a building that the tenant must have a right of removal. The principle is that a landlord and tenant may separate the ownership of land and building by agreement. The right of removal by a tenant, while a significant index of ownership where the agreement between the parties is not

express, is not decisive of such ownership.* Moreover, such property may be separately taxable to the separate owners.

The facts have been stipulated by the parties so there are no issues of fact.

In 1914 and 1915 the then owner of the land and buildings executed three leases providing for successive renewals up to May 1, 1975 and, on certain conditions, beyond that date. The purpose was to develop a cold storage unit. The property was then completely taxable, the ownership of the land being in private hands.

On March 1, 1956 the landlord, New York Dock Company, conveyed the properties to The Port of New York Authority. Shortly thereafter agreements were effected between the Authority and the city under which the Authority undertook to make certain payments in lieu of taxes on the assumption that the Authority was the owner of the entire properties. Thereafter, however, in 1959, the city learned that the Authority considered petitioner tenant to be the owner of the buildings and to be liable for a share of the payments in lieu of taxes. The city thereupon assessed the buildings against the tenant as the owner and accordingly amended the agreements with the Authority.

In order for the assessments to be valid it is necessary that the buildings be owned by petitioner tenant and that they be deemed real property, under the taxing statute. The question of who owns the buildings turns upon the lease provisions.

Of the three leases, the one which concerned Building No. 22 presents no issue. This building by the lease terms concededly remained in the continued ownership of the landlord and its successor. But with respect to the two leases involving the other six buildings the provisions are otherwise. In the first instance the leases left the ownership of the existing buildings in the landlord. It was provided, however, with respect to buildings numbered 18, 19 and 20 that if the tenant should expend $175,000 in improving the premises then the buildings shall " become the absolute property of the Tenant." It was also provided that if the tenant during the term or any renewal demolished the buildings it was obligated to construct new buildings at a minimum cost. Such new buildings, the leases stipulated, " shall be the property of the Tenant ", but the landlord shall have at the expiration of the lease the option either to " permit the Tenant to remove said building or buildings, or

---

* Although it is not necessary to reach the question, it is at least arguable that the tenant here had such a right of removal or the equivalent in connection with its right of demolition — if, indeed, it were true that a right of removal had the significance urged for it by petitioner tenant.

it will purchase said building and buildings at such prices as may be agreed upon '' or as may be fixed by specified mode of appraisal. Upon completion of new buildings, the tenant would become entitled to an extension for a total term of 99 years. Substantially equivalent provisions were contained in the third lease relating to buildings numbered 23, 24 and 25.

Concededly, the tenant made the minimum improvements sufficient to vest title in it to the buildings in accordance with the leases. Insofar as the parties to the leases had expressed themselves they had determined and agreed that upon performance of the conditions precedent the property in the buildings would be in the tenant and not in the landlord. Tenant had a right to demolish, but only on the condition subsequent that the demolished buildings be replaced with new ones of minimum cost. As to the new buildings there was a right of removal at the conditional option of the landlord, and only at the termination of the lease and extensions or renewals. In fact, no new buildings were constructed.

Citing the line of cases in New York which have considered the question of the separate ownership in a tenant of buildings resting on another's land, petitioner tenant has argued that, because it had no absolute right of removal, it never became the owner of the buildings despite the express agreements to the contrary. Actually, there is no such rule of law for which petitioner tenant contends. Nor is there any reason in law or in policy why there may not be a separate ownership of buildings apart from the lands upon which they rest. A fortiori, there is no reason why the concepts of separate ownership and separate liability for taxes may not be acceptable under the taxing statute defining real property to include buildings and certain other improvements (Real Property Tax Law, § 102, subd. 12). Nor is there any ground in the natural order which makes unworkable such a concept of separate ownership. Consequently, unless statute or precedent requires otherwise the agreement of the parties is sufficient to establish such separate taxable property interest.

A pivotal case is *People ex rel. International Nav. Co. v. Barker* (153 N. Y. 98). There the city sought to tax sheds and buildings erected by a tenant upon pier property owned and leased by the city to the taxpayer. All that the leases in question contained with reference to the ownership was that upon expiration of the lease the sheds should become the property of the city. The court (per GRAY, J.) said (pp. 100–101): " It is a familiar rule, that, when structures are erected by persons not owners of the land, they become part of the realty, and, as

such, the property of the landowner. It requires an agreement to be expressed in order to prevent the operation of this rule. If the right of removal is reserved to the lessee in a lease, then, in such a case, he will be regarded as an owner of real estate for the purpose of taxation." It was then held that a provision in the lease that the sheds would become the property of the city at the expiration of the lease did not warrant " the inference of an intermediate ownership ". This suggests, however, by the very expression, that the inference was a possible one if there were, otherwise, sufficient basis for making the inference. The court went on to summarize the rule, saying (pp. 101–102): " The general rule, *where the lease is silent upon the subject,* imposes upon the lessor the obligation to pay the taxes upon the leased property and, in this case, it would be a seeming incongruity, if the city, which is the taxing power, could assess its tenant for taxation. The obligation to erect the structures, as one of the conditions of the letting, and the denial of the right of removal are *considerations,* which irresistibly militate against the assertion of a right to assess them as property of the relator for taxation." (Emphasis supplied.) The statement can hardly be clearer that the right of removal is merely a factor, an index, or a consideration to be used where the lease is silent on the situs of ownership of buildings apart from the land upon which they rest.

There is, however, dictum in the opinion of Judge GRAY to the effect that " it is not legally conceivable that the relator could be an owner until the termination of the lease and that then a new ownership should spring up in the city; for ' ownership necessarily implies perpetuity, or at least the possibility of perpetuity ' " (p. 101). Respectfully, there is no such inexorable concept in the law of property taxation, as any life tenant may advise, especially when he is required to pay the taxes on property. The dictum was not necessary to the decision, and, as will appear, is not required by the precedents. Undoubtedly, Judge GRAY was influenced by the view in the classic law of property that anything less than a life tenancy was not real property but, at best, a chattel real.\* But what is real property for the purposes of taxation under the defining statute, as the Court of Appeals was later to say, need not be the same for all other legal purposes (*Matter of Fort Hamilton Manor* v. *Boyland,* 4 N Y 2d 192, *infra*).

A later case upon which petitioner places great reliance is *People ex rel. Hudson Riv. Day Line* v. *Franck* (257 N. Y. 69).

---

\* But, compare estates terminable by limitation or conditions subsequent which outrank life estates.

This case, too, involved the taxability of buildings located on land owned by the State. The court referred to the general rules applicable to improvements erected upon the land of another, to the effect that ownership ordinarily rests in the landowner, and then said (p. 71) : '' To establish the exception, clear and explicit language must be employed, indicating with precision that the builder retains the right of removal and remains the owner.'' This was said with respect to an arrangement in which there was no express provision for the situs of ownership and the court, making clear what it meant, quoted from the *International Nav. Co.* case (*supra*), that '' It requires an agreement to be expressed in order to prevent the operation of this rule ''. Then, in discussing the provisions of the lease at bar, the court commented that the agreement contained '' no provision reserving to the relator a right of removal *or* conferring upon it the ownership of the structure. It constitutes a mere license or franchise to the relator to erect the dock and to use it for a period of twenty years, for the purpose of landing steamers carrying passengers and baggage '' (pp. 71-72) (emphasis supplied). Emphasizing the complete lack of any incidents of ownership in the relator, the court held that the assessment against it was improper. The case, then, represents no departure but a re-enforcement of the rule as stated in the *International Nav. Co.* case.

It is unnecessary to treat seriatim the more recent cases cited to this court. However, *Matter of Fort Hamilton Manor* v. *Boyland* (4 N Y 2d 192) is of special interest. In that case the parties had agreed that the ownership of the buildings rested in the tenant and the tenant had the right to remove the buildings at the termination of the lease; otherwise, failing removal, the buildings would become the property of the landlord. The court held that the buildings were taxable under the New York tax laws because the situs of ownership was so clear, and in that connection it mentioned the right of removal which, concededly, is always a significant circumstance.

Interestingly, the court in the *Fort Hamilton* case distinguished precedents in other jurisdictions in which leasehold interests were not held taxable under the relevant tax statutes because the leasehold interest was merely a chattel real and not real property. The court, however, found no diffculty in determining that in the case before it the leasehold interest was not being taxed but only the buildings, treating them, under the New York statutory definition, as real property.

*Girard Ins. Co.* v. *Taylor* (6 A D 2d 359), although not a tax case, is particularly significant. There the parties had failed to

agree as to where the ownership of the buildings rested. The right of removal, of course, was discussed by the court, but it was discussed in the company of a variety of factors bearing on the question of the parties' intention as to where the ownership should rest.

Not relevant is *Matter of Mitchel Manor No. 1 Corp.* v. *Board of Assessors* (10 A D 2d 854). There the assessors' only argument to sustain the conclusion that the tenant was the owner of the buildings was that the lease of the land was for a longer term than the useful life of the buildings. The court summarily rejected this slender reed to support the burden of showing ownership in the tenant.

If one pushes backward into the relevant cases in this State decided before the *International Nav. Co.* case the root of the principle is bared.

In *People ex rel. Muller* v. *Board of Assessors* (93 N. Y. 308, 311–312) the court stated the principle:

" The title and ownership of permanent erections by one person upon the land of another, in the absence of contract rights regulating the interests of the respective parties, generally follows and accrues to the holder of the title of the land, but it is perfectly competent for parties by contract to so regulate their respective interests that one may be the owner of the buildings and another of the land. (*People, ex rel. Van Nest,* v. *Comm'rs,* 80 N. Y. 573; *Smith* v. *Benson,* 1 Hill, 176.) Whether their respective interests under general principles of law, be termed real estate or personal property is entirely immaterial to the question under discussion. The only inquiry at present is whether a several interest may be owned by different persons in the same premises which may be assessed to its several owners.

" This question has been recently quite frequently decided in this State, and is no longer open to debate. (*People* v. *Van Nest, supra*; *People, ex rel. D. & F. R. R. Co.,* v. *Cassity,* 46 N. Y. 46; *People, ex rel. N. Y. El. R. R. Co.* v. *Commissioners of Taxes,* 82 id. 460.) "

The court concluded that under the lease before it the tenant held a taxable property interest in the buildings, although under certain conditions the interest might be forfeited or taken, upon payment, by the landlord. The tenant was thus held liable for taxes on the buildings erected on land which was tax exempt. Thus, the investiture of ownership, according to the agreement of the parties, and not the single incident of the right to remove the buildings, was determinative. Moreover, the right of removal was highly qualified and conditioned upon voluntary acts or

abstentions of the landlord. (See, to similar effect, e.g., *People ex rel. Van Nest* v. *Commissioners,* 80 N. Y. 573; *Smith* v. *Mayor,* 68 N. Y. 552; *People ex rel. Dunkirk & Fredonia R. R. Co.* v. *Cassity* (46 N. Y. 46); 2 New York Law of Landlord and Tenant, § 489.)

The only reason the problem has ever become bedeviling is that at common law, as between landlord and tenant, fixtures, and even buildings, when subject to a right of removal by the tenant, would be considered personalty (2 Tiffany, Real Property [3d ed.], § 620). The title was nevertheless always separable. This concept suggested difficulties in applying a real property tax statute (*Smith* v. *Benson,* 1 Hill 176; *People ex rel. Hudson Riv. Day Line* v. *Franck,* 257 N. Y. 69, 71, *supra; People ex rel. Muller* v. *Board of Assessors,* 93 N. Y. 308, 311, *supra*). It is, of course, questionable whether in the light of current legal thinking or current business practice it is necessary to impose such inflexibility on the relevant legal categories to the point of frustrating freedom of contract or the power to tax. None of those subtle problems need be reached here, in any event, because, as has been pointed out many times in the cases already cited, the pertinent tax statute of this State defines real property to include buildings and other structures built on the land (Real Property Tax Law, § 102, subd. 12; *Matter of Fort Hamilton Manor* v. *Boyland,* 4 N Y 2d 192, 198, *supra*). In short, the taxability of the building to the tenant, on land owned by another, need involve no determination for the purposes of tax law whether the tenant's interest in the building is personalty or whether the tenant has a right of removal. These are questions principally related to the law of fixtures as between landlord and tenant, and not to the taxation of real property.

The decisional law, therefore, offers no problem in the case, and no obstruction to the agreement of the parties, under which they may separate the ownership of buildings from ownership of the land upon which they are erected.

Such separation of ownership may serve many useful purposes.\* By retaining or receiving ownership, the tenant may have greater rights or obligations, including that of paying taxes on the buildings, than would ordinarily be incident to the status of a tenant. Indeed, in this very case the leases contain a significant provision stemming from the tenant's ownership of the buildings. As to the six buildings, the tenant has the right to insure the buildings against fire or other loss and the loss is

---

\* An interesting example is found in the buildings erected over the New York Central Railroad right of way in Manhattan (see *New York Cent. R. R. Co.* v. *New Haven & Hartford R. R. Co.,* 13 A D 2d 309, appeal pending).

payable to and for the benefit of the tenant. Moreover, ownership of the buildings could carry with it the right to an award in condemnation. These, and other incidents of ownership which readily come to mind, may thus be settled upon either the landlord or tenant by the simple expedient of express agreement.

The law of New York conforms to what appears to be the uniform rule elsewhere in the Nation. (On separability of ownership in the law of property: 5 Powell, Real Property, par. 655 *et seq.*; 2 Tiffany, Real Property [3d ed.], § 626; 51 C. J. S., Landlord and Tenant, § 394 *et seq.*; see, also, 3 Thompson, Real Property [1959], § 1140 *et seq.* On separability of ownership in the law of real property taxation: Taxation-Buildings on Leased Land, Ann. 154 A. L. R. 1309; 84 C. J. S., Taxation, § 72.) The analysis and discussion in American Law Reports is particularly useful. Moreover, the cases are generously collected.

A caveat is suggested. As with all things, concepts may not be confused with mere words, which are but symbols. Consequently, if an agreement between landlord and tenant should provide that the tenant is the owner of the building, such fact alone would not, in all cases or for all purposes, be absolutely conclusive. If the agreement conferred no incidents of ownership whatsoever upon the tenant then the provision might well be held meaningless and unavailable for all or for some purposes, including, perhaps, that of taxation on real property.

Accordingly, the order granting the petition invalidating the assessment and taxes imposed pursuant thereto should be reversed, as a matter of law, and the petition dismissed, with costs to respondents-appellants.

BOTEIN, P. J., RABIN, VALENTE and BASTOW, JJ., concur.

Order, entered on or about February 8, 1961, granting the petition invalidating the assessment and taxes imposed pursuant thereto unanimously reversed, as a matter of law, and the petition dismissed, with $20 costs and disbursements to the appellants.