*715 OPINION OF THE COURT
Wesley, J.
The issue on this appeal is whether, for purposes of RPTL 420-a, the Colleges of the Seneca owns a dormitory building constructed by a developer on real property owned by the College and financed through leasing agreements between the parties. We answer in the affirmative, and hold that the dormitory is exempt from real property taxation under that section.
The Colleges of the Seneca, an educational corporation chartered by the Regents of the State of New York, operates Hobart and William Smith Colleges on one campus in Geneva, New York. The College owns a parcel of land on which the subject dormitory is located. Prior to 1996, the land was designated as tax exempt on the City of Geneva’s real property tax assessment rolls.
In 1996, the College leased the land pursuant to a “Ground Lease” to GCS Growth, L. L. C. (GCS). Simultaneously with the signing of the Ground Lease, the College and GCS entered into a “Master Lease” whereby GCS agreed, at its sole expense, to design and build a dormitory subject to the College’s approval. GCS advanced the up-front development costs and borrowed the remaining construction costs from an institutional lender. The College, in turn, provided security for the construction loan by pledging a portion of its endowment fund.
Pursuant to the Ground Lease, the College is the owner of the land and leases the underlying property to GCS for a period of 40 years. At the end of that lease (and the Master Lease) or in the event of GCS’s default, all improvements on the land revert to the College. The College and GCS later entered into an addendum to the Ground Lease which amended it to provide that the College is the owner of the land and all leasehold improvements “including buildings, constructed or to be constructed thereon” by GCS.
Under the Master Lease, GCS leases back the dormitory to the College for 40 years. That lease gives the College the exclusive right to review and approve all aspects of design and construction of the dormitory. The College has the sole authority to select student residents and establish rental levels for the dormitory. Finally, the College has the right to terminate the Master Lease at any time.
Upon early termination of, or default on, the Master Lease, the College is required to pay GCS the present value of projected rental payments for the remaining lease term along *716 with the expenses incurred by GCS in the planning, development, construction and maintenance of the dormitory over and above the original amount GCS had borrowed (“Discounted Value of the Building and Landlord[’]s Equity”). If the dormitory suffers more than 50% damage as a result of fire or other causes, the College receives the insurance proceeds and must then pay GCS the “Discounted Value of the Building and Landlord [’]s Equity” or it must continue to pay the full amount of rent for the remainder of the lease term. A similar procedure is employed if the dormitory is taken through condemnation. If the dormitory is substantially damaged, the College determines whether or not to rebuild.
After construction of the dormitory was completed in 1996, the College submitted an application the following year to the City Assessor for a real property tax exemption under RPTL 420-a. The Assessor and the Board of Assessment Review continued the exemption for the land but denied the College’s application with respect to the dormitory. Instead, the Board of Assessment Review determined that only l/40th of the dormitory value — representing the amount of the lease that the College had paid — would be exempt. The Board concluded that although the College owned the land, the dormitory is owned by GCS to the extent that the College has not yet paid for it. Based on that determination, the Assessor completed the 1997 final real property tax assessment roll for the City. The College thereafter commenced this combined CPLR article 78 and RPTL article 7 proceeding to challenge the Board’s determination, to remove the property from the assessment roll and to obtain a refund of any monies already paid.
Supreme Court agreed with the City that the dormitory is not exempt from real property taxation and dismissed the petition. The court determined that the Master Lease is a “lease-to-own” agreement, and that the College would not own the dormitory until it paid the entire purchase price. The Appellate Division affirmed “for the reasons stated” by Supreme Court (262 AD2d 964). We reverse.
Absent agreement to the contrary, when a tenant erects a structure on leased property, the structure generally becomes a part of the realty (People ex rel. International Nav. Co. v Barker, 153 NY 98, 100-101). If a right of removal is clearly and explicitly reserved to the tenant in the lease, then in certain circumstances the tenant will be regarded as an owner of the real estate for the purpose of real property taxation (see, id., at 101; see also, People ex rel. Hudson Riv. Day Line v *717 Franck, 257 NY 69, 71). Language in the lease indicating the tenant’s right to remove a structure, however, is not conclusive of ownership in all cases (Matter of National Cold Stor. v Boy-land, 16 AD2d 267, 268-269 [Breitel, J.], affd without opn 12 NY2d 808).
In Matter of National Cold Stor. v Boyland (supra, 16 AD2d 267, 268), the underlying land in issue was owned by the Port of New York Authority. The leases between the Authority and its tenant provided that if the tenant expended certain sums in improvements, six buildings out of a complex of seven would then become the absolute property of the tenant. The petitioner-tenant argued, however, that because it had no absolute right of removal, it never became the owner of the buildings despite the express agreements to the contrary. Thus, according to the tenant, the buildings were owned by the Authority and exempt from real property taxation. The Appellate Division rejected the tenant’s argument.
“It is not true, as a matter of law, in order to sustain a separate property interest in a building that the tenant must have a right of removal. The principle is that a landlord and tenant may separate the ownership of land and building by agreement. The right of removal by a tenant, while a significant index of ownership where the agreement between the parties is not express, is not decisive of such ownership. * * * Moreover, such property may be separately taxable to the separate owners” (id., at 268-269).
The Court examined the leases and determined that the tenant had made the minimum improvements sufficient to acquire title in the six buildings. Moreover, the Court noted that the leases conferred significant “incidents of ownership” to the tenant, including the right to insure the buildings against fire or other loss with the loss payable to, and for the benefit of, the tenant (id., at 274-275). In fixing the tax liability on the petitioner, the Court concluded that the tenant in fact owned the six buildings.
As in Matter of National Cold Stor., the question of who owns the dormitory at issue turns on the two leases between the parties.* The College argues that the leases identify that it has all the incidents of ownership of the dormitory. Further *718 more, the College asserts that under the Master Lease, it has the rights and obligations it would have, had it directly financed the dormitory and secured the obligation by a mortgage instead of through the lease transactions with GCS. We agree.
The Ground Lease expressly provides that the College is the owner of the land and all leasehold improvements, including buildings, constructed thereon by GCS and that upon the termination of both the Ground and the Master Leases, the College is entitled to full possession and ownership of the fee and all leasehold improvements on the property. In addition, the Master Lease confers upon the College the right to review and approve the design of the dormitory; the right to select who will live in the dormitory; and the right to determine whether or not to rebuild the dormitory in the case of substantial damage to it. In the event of substantial damage to the building, the College receives the insurance proceeds, subject to payment of GCS’s construction costs plus an 8% return. Thus, GCS’s equity in the building is never a factor of the dormitory’s actual value minus remaining debt; GCS’s pay-out is the present value of the remaining rental payments with a guaranteed return plus its construction costs. On these facts, we conclude that, for purposes of RPTL 420-a, the College is the owner of the dormitory and as such, the dormitory is exempt from real property taxation pursuant to that section. As the College seeks a refund of any monies already paid, the case must be remitted to Supreme Court for resolution of that issue.
Accordingly, the order of the Appellate Division should be reversed, with costs, the petition granted and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.
Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Rosenblatt concur.
Order reversed, etc.

 Most of the cases cited by the parties on the issue of the ownership of improvements on real property involve an owner/landlord who owns the land *718 and an occupier/tenant who builds or makes the improvement for its own use (see, People ex rel. Hudson Riv. Day Line v Franck, 257 NY 69, supra; People ex rel. International Nav. Co. v Barker, 153 NY 98, supra; Matter of United States v Tax Commn., 22 AD2d 290; Matter of National Cold Stor. v Boyland, 16 AD2d 267, affd 12 NY2d 808, supra). In this case, the owner/landlord of the land is also the occupier/tenant of the building erected on the land.